IN THE MATTER OF THE APPEALS OF KENTS 2124 ATLANTIC AVE., INC., KENTS 1214 ATLANTIC AVE., INC., AND VIENNA DELICATESSEN CO., FROM 1956 AND 1957 ASSESSMENTS BY THE CITY OF ATLANTIC CITY.

Argued October 10, 1960—Decided January 9, 1961.

See also, 31 *N. J.* 266, 156 *A. 2d* 700.

22

Mr. David M. Perskie argued the cause for appellants (*Messrs. Perskie & Perskie*, attorneys).

Mr. Daniel J. Dowling argued the cause for respondent (*Mr. Murray Fredericks*, City Solicitor, attorney; *Mr. Daniel J. Dowling*, Assistant City Solicitor, of counsel and on the brief).

Mr. Herbert H. Fine, Special Tax Counsel for the City of Hoboken, *Mr. Leo Rosenblum* of counsel to the Corporation Counsel of the City of Jersey City, and *Mr. Leon S. Milmed*, Township Attorney for Township of Weehawken, filed a joint brief *amici curiae*.

The opinion of the court was delivered by

WEINTRAUB, C. J. The owners of three parcels of improved realty in Atlantic City appealed from tax assessments made for the years 1956 and 1957. Appellants charged that although the assessments were at less than full true value, nonetheless they exceeded the "common level" of assessments in the taxing districts and demanded reductions to that level. The State Division of Tax Appeals held the required showing for relief had not been made. We certified the ensuing appeals on our motion before the Appellate Division of the Superior Court considered them. After oral argument, we remanded the matters for testimony to shed light upon the assessors' practices. The State Division of Tax Appeals held further hearings and pursuant to our mandate returned the supplemental record with its findings. The Division's ultimate conclusions remained the same. The cause was reargued on the basis of the augmented proofs.

The pivotal question is, what suffices to establish a basis for relief in a case such as the one before us?

We need not retell the story of unequal assessments of property for local taxation. See *Switz v. Middletown Twp.,*

23 N. J. 580 (1957); *Village of Ridgefield Park v. Bergen County Board of Taxation,* 31 N. J. 420 (1960). The present case is another episode in the quest of the taxpayer for treatment commensurate with that given his fellow taxpayers within the municipality. The cases just cited hold a taxpayer may sue to compel future compliance by the local assessor with the statutory mandate for assessment at full true value. That remedy, however, does not repair a past injury. To the latter end, taxpayers have sought reductions to the percentage of true value at which other property in the taxing district was assessed.

## I.

The development of an effective individual remedy for unequal assessment was delayed by *Royal Mfg. Co. v. Board of Equalization of Taxes,* 76 N. J. L. 402 (*Sup. Ct.* 1908), affirmed 78 N. J. L. 337 (*E. & A.* 1909), which held that a taxpayer so aggrieved could not have his assessment reduced below the statutory standard of full true value but rather could obtain relief only by appeals designed to bring all other assessments up to that standard. Quite obviously that remedy was illusory. It was so held in *Hillsborough Township, Somerset County, N. J. v. Cromwell,* 326 U. S. 620, 66 S. Ct. 445, 90 L. Ed. 358 (1946), which reiterated the principle that a state must reduce an assessment to end a discrimination violative of the equal protection clause of the Fourteenth Amendment even though the result is assessment below the standard fixed by statute.

After *Hillsborough,* the issue reached this court in *Baldwin Construction Co. v. Essex County Board of Taxation,* 16 N. J. 329 (1954). There the County Board had directed an increase in the assessments of selected portions of ratables in certain municipalities. The court found that "all lands throughout the affected municipalities were assessed by the local assessors according to a common ratio of value, making for equality and uniformity within the taxing district" (at *p.* 338). Since the increases ordered

by the County Board resulted in assessments above the "common ratio" in "discriminatory taxation violative of constitutional principle" (at *p.* 338), the increases were struck.

In *Baldwin* the court dealt with the issue on the premise that there was in fact a "common level," that is, a ratio to or percentage of full true value at which property generally was assessed in the municipality. Where in fact that is so, it is a simple matter to eliminate a disparity by reduction to that level. But experience indicates that except where a municipality has made a complete revaluation, parcel by parcel, and has implemented that work-product, a common level, in the sense of a single ratio to true value at which the great bulk of the ratables is assessed, cannot readily be shown if indeed one exists. Hence efforts have been made to prove a "common level" by relying upon the average ratio determined by the State Director of Taxation pursuant to *N. J. S. A.* 54:1–35.1 or the general ratio found by the county board of taxation pursuant to *R. S.* 54:3–17. See *Delaware, Lackawanna and Western R. R. Co. v. Neeld,* 23 *N. J.* 561; *City of Hoboken v. Jarka Corp.,* 26 *N. J.* 336 (1958); *Union City in Hudson County v. Ormond Tool & Mfg. Co.,* 26 *N. J.* 494 (1958); *North Bergen Twp. v. Venino,* 45 *N. J. Super.* 143 (*App. Div.* 1957); *Jal Co. v. Division of Tax Appeals,* 47 *N. J. Super.* 571 (*App. Div.* 1957), certification denied 27 *N. J.* 278 (1958).

The State Director's average ratio and the general ratio of the county board are primarily intended to meet the problem of *intermunicipal* inequality. They are designed to establish the total true value of the aggregates of real property within each municipality, in the one case for the purpose of fixing a basis for the distribution to municipalities of State aid for education, and in the other to fix the basis for the allocation among municipalities of the burden of taxation for the support of county government. These ratios are found essentially by comparison of the selling prices of parcels of property with their assessed values.

The State Director calculates the average ratio of the reported sales of real property in four classes: (1) vacant; (2) resident; (3) farm; and (4) "other" (including commercial, industrial, apartment houses, etc.). The ratio is weighted to reflect the value of the parcels sold and the total aggregates in each class. By reference to the average ratio, the total assessed value as reported by local assessor is adjusted to full true value, the resulting figure serving as the basis for the allocation of State aid and the distribution of the county tax burden.

The question is whether the average ratio thus determined may be used to deal with the problem of *intramunicipal* inequality. If the sales data used to find the ratio in fact revealed some percentage of true value about which the bulk of individual assessments tended to cluster, one might accept that percentage as the common level of assessments. But the underlying sales material may reveal no such central figure, but rather widely varying assessment ratios within each of the four classes of property referred to above. So, in the present case, the Director's Tables dated October 1, 1956 show an average ratio of 31.41% based upon sales of vacant land at prices ranging in ratio to assessed value from 2.25% to 88%; sales of residential property at ratios of 4.13% to 86%; and sales of "other" property at ratios from 5.13% to 79.38%. The Director's Tables dated October 1, 1957 show an average ratio of 31.40% on the basis of sales of vacant land ranging from 6% to 82.50%; residential property ranging from 4.21% to 64.77%; and "other" property ranging from 9.14% to 129.12%. Inspection of the sales data discloses no single ratio at which it can be said that real property was generally assessed for the years in question. The assessors themselves, in their testimony upon the remand, disavowed consciousness of a specific ratio and portrayed the total picture as the hit-and-miss product of years of inattention.

It is clear the average ratio is not a handy tool with which one seated at a desk can bring all assessments to

full true value. The reason, of course, is that since the individual assessments vary within a wide range, the inequities would be aggravated if all assessments were brought to full true value upon the assumption that they reflect a uniform percentage of that value. *Switz v. Middletown Twp., supra* (23 *N. J.,* at *p.* 604) ; *Delaware, Lackawanna and Western R. R. Co. v. Neeld, supra* (23 *N. J.,* at *p.* 574). Nothing short of complete revaluation, parcel by parcel, plus appropriate measures to keep the rolls current can achieve equality.

█ But although the average ratio is not thus serviceable to achieve across-the-board revaluation on the assessment rolls, the other question remains, whether it may nonetheless be fairly used to evidence a ratio to which an individual assessment substantially above it should be reduced.

## II.

Preliminarily we should explore the legal basis upon which a claim of unequal assessment should be tested.

█ *Baldwin,* in its stated terms, turned upon an application of constitutional principle with particular stress upon the federal view of the equal protection clause. The question is whether we may properly limit relief from unequal treatment to situations satisfying the requirement of the federal doctrine. We think we may not.

██ The equal protection clause does not bar *classification* of real property for local taxation. *Allied Stores of Ohio, Inc. v. Bowers,* 358 *U. S.* 522, 79 *S. Ct.* 437, 3 *L. Ed.* 2d 480 (1959). The Federal Supreme Court has declined to interfere with classified treatment whether established by the express language of state law or by "settled state practice." *Nashville, Chattanooga & St. Louis Ry. v. Browning,* 310 *U. S.* 362, 369, 60 *S. Ct.* 968, 84 *L. Ed.* 1254, 1258 (1940). Rather the equal protection clause condemns intentional, invidious treatment within a class the state law has created. Our duty, however, is not limited

to enforcement of the Federal Constitution. We are bound as well to enforce both our State Constitution and our State statutes, and a taxpayer may of right call upon us to honor that obligation. Hence relief should be granted upon a showing which satisfactorily reveals unequal treatment in violation of State law and a reasonable basis for compensating for the wrong, whether the wrong be visited invidiously or be the aftermath of a failure to comply with the law. Such appears to be the view adopted elsewhere. *Appeal of Sears, Roebuck & Co.*, 74 *Idaho* 39, 256 *P. 2d* 526 (*Sup. Ct.* 1953); *Iowa Cent. Ry. Co. v. Board of Review*, 176 *Iowa* 131, 157 *N. W.* 731 (*Sup. Ct.* 1916); *Hodges v. Town of Kensington*, 102 *N. H.* 399, 157 *A. 2d* 649 (*Sup. Ct.* 1960); *Rollins v. City of Dover*, 93 *N. H.* 448, 44 *A. 2d* 113 (*Sup. Ct.* 1945); *People ex rel. Yaras v. Kinnaw*, 303 *N. Y.* 224, 101 *N. E. 2d* 474 (*Ct. App.* 1951); *In re Brooks Building*, 391 *Pa.* 94, 137 *A. 2d* 273 (*Sup. Ct.* 1958); cf. *Hamm v. State*, 255 *Minn.* 64, 95 *N. W. 2d* 649 (*Sup. Ct.* 1959). In New York, the legislature authorized a relatively simple pattern of proof. See *People ex rel. Yaras v. Kinnaw, supra.*

The testimony of the assessors in the present case reveals a total indifference to their statutory duty. The assessment rolls were copied year after year, with no effort to achieve a general revaluation. Thus inequalities due to progressive inflation, changing neighborhood fortunes and perhaps other causes, were perpetuated. The assessors apparently revised assessments only when new construction required them to act. In describing how they valued new construction, the assessors expressly eschewed any conception of the value of the properties. Rather, they say, they looked for some "comparable" property in the immediate neighborhood. Any other course, their testimony continues, would have been "discriminatory." If property in general is assessed at a uniform ratio, it may be a satisfactory expedient to assess an individual parcel on the basis of the treatment of comparable properties, but when there is no semblance of general uniformity, the comparable properties are but arbitrary

standards, and assessments made by reference to them merely compound the existing inequality. That much the assessors had to know. The subject of unequal assessments was widely bruited both in legislative and judicial circles at the time of the assessments here in question. See *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955). They could hardly have been unaware of available evidence of widely varying ratios disclosed by reported sales in their community. The record shows the assessors received such data, which they carefully filed and wholly ignored.

The city in substance argues that the picture is too chaotic to permit any relief. It would be a sad reflection upon the judiciary and indeed upon all government if the rights of a taxpayer were to be diminished in proportion to the violence of the assault upon them. Indeed the assessments for the entire city for the years in question were confessedly made upon so irrational and arbitrary a basis that they would be set aside and the work ordered to be redone but for the intolerable consequences which would ensue if local government were thus denied the current revenues it must have. *Village of Ridgefield Park v. Bergen County Board of Taxation, supra* (31 *N. J.,* at *p.* 428). The denial of direct relief of that type simply emphasizes the need for some other remedy. And that remedy should not be a will-o'-the-wisp; it must be within the practical reach of the victim. *Cf. Village of Ridgefield Park v. Bergen County Board of Taxation,* 33 *N. J.* 262, 266 (1960); *Buerger v. Board of Property Assessment,* 188 *Pa. Super.* 561, 149 *A. 2d* 466, 469 (*Super. Ct.* 1959).

We realize the factual patterns within municipalities may vary and hence we refrain from declaring an inexorable formula for all cases. For example, if a local assessor consciously seeks to employ a fixed ratio throughout the taxing district, it may be that the level toward which he is striving should be accepted as the standard for relief from unequal taxation. Other suggestions are advanced by *amici curiae* who, upon their application made after the

argument of the case, were permitted to file briefs. It is urged that where the assessor uses different ratios for different classes of property, a reduction should not be ordered below the ratio the assessor applied to the class in which the parcel in litigation belongs. So also, they suggest that if land is generally assessed at a uniform level while improvements are assessed at another and even sundry levels according to classifications of such improvements, the several existing ratios should be separately applied to the component parts of the challenged assessment. Thus they urge that existing classifications, although contrary to law, should be recognized for the limited purpose of litigation of this kind. We know of no authority to support these proposals, see *Bemis Bros. Co. v. Claremont,* 98 *N. H.* 446, 102 *A. 2d* 512 (*Sup. Ct.* 1954); *Chastain's Inc. v. State Tax Commission,* 72 *Idaho* 344, 241 *P. 2d* 167 (*Sup. Ct.* 1952); *Anderson's Red & White Store v. Kootenai County,* 70 *Idaho* 260, 215 *P. 2d* 815 (*Sup. Ct.* 1950); *Sears, Roebuck & Co. v. State Tax Commission,* 214 *Md.* 550, 136 *A. 2d* 567 (*Ct. App.* 1957), but we need not now pass upon the questions thus hypothetically projected. We do however stress the principle that relief from unequal treatment will be granted, and this upon an appropriate basis requiring the individual taxpayer to prove no more than sensibly can be expected of him.

Where, as here, the record of sales indicates there is no common level for all or any class of real property and the assessors disavow any effort to achieve one, the average ratio should be deemed sufficient evidence of the level to which reduction should be granted in the absence of circumstances indicating that the average should be modified for that purpose. The trier of the facts may properly consider any weakness which may appear, as, for example, a paucity of sales in the municipality concerned or some imbalance caused by unusual experience. To that end, consideration may be given to the average ratio of other years and to such appraisals of properties as the trier of the

facts may feel to be necessary to assure that the average ratio is not grossly deceptive as a fair gauge of the ratio of assessment to market value. Pretrial conferences would be useful to delineate the area of proof.

In the present case, the record is adequate for a finding. The number of reported sales underlying the average ratio is substantial. The appraisals in evidence show the assessments of new motels were made at a ratio substantially below the average ratio and hence indicate that use of the average ratio would not be unfair to the municipality. Finally the record would support a finding that the assessments in question substantially exceed that ratio. We should add that we are aware of some opinion that the *unweighted* average ratio is better suited than the *weighted* average ratio for the purposes of an individual taxpayer's appeal. We leave the initial determination of that subsidiary question to the expertise of the State Division.

We have reached this result after carefully considering attacks upon the appropriateness of the average ratio. It is argued a reduction to the average ratio will increase the burden upon other properties assessed above it, and indeed if sufficient reductions should be granted the average itself will be progressively driven down. Abstractly, all of that is so, unless someone concurrently raises assessments which are below the ratio. But the criticism goes not to the justice of granting relief but rather to the amount of it. Mathematical perfection in taxation is unobtainable, and hence relief should not be denied merely because the result lacks absolute precision. The injured taxpayer is entitled to practical relief.

Moreover the remedy we find appropriate has an added virtue, for if a flood of appeals should ensue or be feared, it may well quicken the official conscience and induce the district to revalue and to keep the rolls current. It must be borne in mind that whether the standard of valuation is full true value or such percentage of it as may in the future be established under *chapter* 51 of the *Laws of* 1960,

the vice of unequal treatment will persist so long as the assessor fails to do his job. The remedy of *Switz* and the remedy we here find suitable will combine, we hope, to excite the assessor to proper performance.

It may be added that our Legislature accepted and specified the average ratio (unweighted) as the level with respect to the assessment of tangible personal property used in business if it should be less than the percentage fixed under the new statute to which we have already referred. *L.* 1960, *c.* 51, § 8. We are aware that the Legislature has not yet acted finally upon a bill (S.2) which would use the unweighted average ratio as the central figure in a remedy for unequal taxation of real property. But until some better technique appears or some other suitable one is provided by statute, we are satisfied to utilize the average ratio in cases such as the one before us.

For comments elsewhere upon the use of the average ratio in litigation of this kind, see *Buerger v. Board of Property Assessment, supra* (188 *Pa. Super.* 561, 149 *A.* 2d 466, 470) ; *People ex rel. Yaras v. Kinnaw, supra* (303 *N. Y.* 224, 101 *N. E.* 2d 474) ; *Hamm v. State, supra* (255 *Minn.* 64, 95 *N. W.* 2d 649).

A majority of the State Division thought the record was deficient for want of separate proof as to the valuations of land and of building. We disagree. A taxpayer who seeks a reduction of an assessment below true value must prove that his share of the total tax burden substantially exceeds the share allocated to others generally. If his proof does not meet that test, it would be of no moment that the assessment of either his land or his building would be excessive if separately measured against the general treatment of land or of improvements respectively. Indeed he would receive an undue advantage if he could confine his proof in a case of this kind to the treatment of only land or building and have the trier of the facts assume the assessed valuation of the other accords with true value. The burden is his to establish with independent proofs the true value of

the parcel with its improvements and that the total assessment of the improved parcel substantially exceeds the ratio of assessment of real property in the taxing district. By the same token, if the taxpayer meets that burden, he is not concerned with such allocation of the resulting figure between land and improvements as may be made administratively for some other purpose. This is not to say that evidence may not be offered as to the value of land and of building separately as a step in the process of proving the total value of land and building as an entity; rather the point is that relief is not warranted unless the total treatment of the parcel as improved violates the existing rule of equality.

In its supplemental brief, the city asked that if we should find a basis for relief has been shown, the matter be remanded to the State Division "so that it can receive further testimony with respect to the values of the properties involved in this appeal." We appreciate the city may well have based its trial tactics upon the supposition that relief would be denied if a common level in fact could not be shown and hence omitted to meet the testimony relating to the value of the taxpayers' properties. Under the circumstances, the city is entitled to the opportunity it requests.

The judgments are reversed and the matters remanded to the State Division of Tax Appeals for further proceedings not inconsistent with this opinion.

Jacobs, J. votes to reverse and remand but does not join in the Court's opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.