139 N.J. Super. 276 (1976)
353 A.2d 542
PISCATAWAY ASSOC., INC., BLOCK 229, LOT 3-A, KAPLEN, GEIGER, CHANDLER ASSOC., INC., BLOCK 229, LOT 3-B, CHANDLER AND PISCATAWAY ASSOC., INC., BLOCK 229-A, LOT 1, CHANDLER ASSOC., W. KAPLAN, R. GEIGER, BLOCK 229-A, LOT 7, CHANDLER ASSOC. AND PISCATAWAY ASSOC., INC., BLOCK 229-A, LOT 8, PETITIONERS-RESPONDENTS,
v.
TOWNSHIP OF PISCATAWAY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1975.
Resubmitted January 9, 1976.
Decided February 20, 1976.
*277 Before Judges LYNCH, LARNER and HORN.
Mr. M. Roy Oake argued the cause for appellant (Mr. John Conroy on the brief).
*278 Mr. Leo Rosenblum argued the cause for respondents (Messrs. Rosenblum & Rosenblum, attorneys).
The opinion of the court was delivered by LYNCH, P.J.A.D.
The Township of Piscataway appeals from judgments of the Division of Tax Appeals which reduced the tax assessments for the years 1971, 1972 and 1973 on five parcels of realty owned by Piscataway Associates, W. Kaplan, R. Geiger and Chandler Associates (hereinafter collectively known as "taxpayer"). The assessments and the judgments of the Division were as follows:

 1971 1972 1973
 Assessments $4,807,900 $5,010,400 $15,031,200
 Judgments appealed
 from 4,572,835 4,572,835 10,558,022

The Division's judgment was on two grounds: (1) the taxpayer had established its claim of "discrimination" (see In re Appeals of Kents, 2124 Atlantic Ave., 34 N.J. 21 (1961); Continental Paper Co. v. Ridgefield Park, 122 N.J. Super. 446, 450-451 (App. Div.), certif. den. 63 N.J. 328 (1973)), and therefore application of the average ratio of the Director of Taxation was justified; (2) reduction in the true value of the property was appropriate.

The "discrimination" issue
On appeal there is no dispute concerning that part of the opinion of the Division which fixes the percentage of true value at which the properties were assessed for the tax years 1971 and 1972 at 35% because although that figure represents an approximation of the Director's average ratios for 1971 and 1972, it is substantially identical to the common level of assessment the township asserts was applied in those years (see p. 280, infra). The township does, however, challenge the Division's decision as to 1973. For that year the Division computed respondent's assessment by applying the Director of Taxation's 1973 average ratio (80.81%) to the *279 true value of the property.[1] The Township contends that the correct assessment for that year is 100% of true value.
The sole finding in the decision of the Division on the issue of discrimination was expressed as follows: "A review of the testimony reveals that the charge of discrimination was convincing." That falls far short of the requisite adequate findings of fact. Van Realty, Inc. v. Passaic, 117 N.J. Super. 425 (App. Div. 1971); Benjamin Moore & Co. v. Newark, 133 N.J. Super. 427 (App. Div. 1975). However, since the question is solely one of law on the record before us, we decide the discrimination issue without remand. Cf. Humble Oil & Refining Co. v. Englewood Cliffs, 135 N.J. Super. 26 (App. Div. 1975).
John Redmond, a member of the township's board of assessors, testified there had been a complete revaluation in the municipality for the tax year 1965. He further stated that for the tax years 1971 and 1972 the assessors attempted to assess property at 35.5% and 33% of true value, respectively, in keeping with the Director's ratio for those years. For the tax year 1973, in order to assess at 100% of true value as directed by the Middlesex County Tax Board, Redmond testified that the 1972 assessments were multiplied by 3. This was done uniformly throughout the municipality, except for pipelines and "qualified farm property."
Though the decision of the Division did not express its findings or reasoning, presumably it concluded that the wide range of individual ratios of assessments of property to their sales prices reflected in the Director's 1973 sale study (individual ratios varied from 28% to 180%) demonstrated, as taxpayer argues here, that there was no "common level" in Piscataway, thus permitting application of the Director's *280 ratio. A similar claim was directly rejected in the recent case of Tri-Terminal Corp. v. Edgewater, 68 N.J. 405 (1975), where the court stated (at 413) that the "outer ratio range of individual sales does not necessarily reflect degree of departure from general uniformity of assessments of properties." The court held that demonstrating a wide range in the Director's data for Edgewater did not constitute a showing that there was no common level in that community. Therefore, the Supreme Court affirmed the Appellate Division's reversal of the holding of the Division of Tax Appeals that there was no common level for the years in question.
In reaching its decision in Tri-Terminal the Supreme Court, speaking through Judge Conford, described the discrimination remedy declared in Kents as springing from the "then common pattern of planlessness and chaos in local assessing practices." 68 N.J. at 410. Judge Conford pointed out that in Kents Chief Justice Weintraub expressly recognized that the taxing district might have avoided the blatant lack of uniformity in assessments had it conducted periodic general revaluations throughout the district. As was stated in Tri-Terminal, shortly before Kents "the local property tax bureau of the State Division of Taxation and the county boards of taxation influenced taxing districts to improve their assessing practices particularly to conduct general revaluations at frequent intervals." 68 N.J. at 411; see Willingboro v. Burlington Cty. Bd. of Tax., 62 N.J. 203, 209 (1973). Thus, the court in Tri-Terminal noted that Edgewater had conducted revaluations in 1960, 1968 and 1973 (each applicable to the next tax year) and that the taxpayer had not challenged the "relative fairness" of the 1968 reassessment of its properties (the last revaluation before the tax years in question) as against those of other taxpayers in the district. The court went on to say:
In this posture of the case, the most determinative factor is that the taxpayer has made no effort to show that, relative to the generality of other assessed real property in the municipality, its property *281 is being assessed on a less favorable basis. It has not shown, and does not claim, that the value of its property has not sustained the same enhancement in true value between 1969 and the instant tax years that has undoubtedly attended the generality of other properties and which, at least prima facie, would seem to leave in a position of relative uniformity of tax treatment all property owners whose 1971 and 1972 assessments are at the same level as was fixed by a concededly fair and accurate general revaluation in 1968-1969. Cf. Continental Paper Co. v. Vil. Ridgefield Pk., 122 N.J. Super. 446, 455 (App. Div. 1973), certif. den. 63 N.J. 328 (1973). We cannot sum up the deficiency in taxpayer's case better than to say it has not met the Kents' criterion (34 N.J. at 33): "A taxpayer who seeks a reduction of an assessment below true value must prove that his share of the total tax burden substantially exceeds the share allocated to others generally." In short, Edgewater assessed at a common level in 1971-1972, and this taxpayer was assessed at that level. [68 N.J. at 411-412].
Here Piscataway had a complete revaluation for 1965. As stated above, a member of the township board of assessors testified that for the tax year 1971 the assessors assessed at a rate of 35.5%. The Director's ratio for that year was also 35.5%. For 1972 they assessed at 33%, and the Director's ratio was 32.39%, indicating a high degree of accuracy in the assessments. Having been directed by the county board to assess at 100% of true value for the tax year 1973, the assessors multiplied all 1972 assessments by three. Thus, since the township assessed for 1971 and 1972 substantially at the Director's ratio, it is fair to say that uniformity was maintained for 1973. Under such circumstances there can be no claim of discrimination for every taxpayer was treated alike. Absent proof to the contrary, and none has been presented, it appears that in 1973 Piscataway assessed all properties uniformly at their full 1972 true value. To paraphrase Tri-Terminal, we see no reason why a 1972 true value standard uniformly applied is not an acceptable common level in 1973 for purposes of refuting a discrimination claim. 68 N.J. at 412.
In presenting his testimony on the issue of discrimination the taxpayer's expert presented the following table showing *282 the ratio of assessed value to sales price in the sales that make up the Director's surveys for 1971, 1972 and 1973.

 1971 1972 1973
0-10% 2 2 0
10-20 16 20 0
20-30 159 301 1
30-40 171 106 4
40-50 25 20 12
50-60 8 8 12
60-70 4 1 54
70-80 2 2 83
80-90 2 0 38
90-100 1 0 19
100-110 0 0 8
110-120 1 0 6
120-130 0 0 1
Over 130 1 0 4

Taxpayer argues that the chart demonstrates that there was no common level in Piscataway for the years in question. We disagree.
An examination of the chart indicates that, even accepting the Director's individual sales figures as significant, they tend to "cluster" at certain levels. For example in 1971 in 84% of the sales the assessed value was within 20 to 40% of the sales price. In 1972 88% of the sales were within that range. When the assessments were tripled for the 1973 tax year, 80% were within the 60-100% range.
It is true that the sales ratios showed some variance. However, our courts have recognized that in this field "[a]bsolute equality is impracticable," Baldwin Const. Co. v. Essex Cty. Bd. of Tax., 16 N.J. 329, 342 (1954), and "mathematical precision in the valuation of property for taxation is not requisite, nor is it attainable." Id., emphasis added. In Kents it was said: "If the sales data used to find the ratio in fact revealed some percentage of true value about which the bulk of assessments tended to cluster, one might accept *283 that percentage as the common level of assessments." 34 N.J. at 27 (emphasis added).
Another measure of clustering suggested in Tri-Terminal (68 N.J. at 413, n. 4) is the "coefficient of deviation." See Handbook for New Jersey Assessors (rev'd 1965), at 201-203 (Bureau of Government Research, Rutgers, the State University). According to Tri-Terminal, a coefficient of less than 20% is usually considered good, i.e., indicates a substantial degree of uniformity in assessment practices. 68 N.J. at 413. If one eliminates the ten sales of most extreme deviation from the 242 sales in the Director's 1973 sales survey for Piscataway (of which we take notice), the remaining 232 sales show a coefficient of deviation of under 14%.[2]
The data here are a far cry from the almost random sales ratios found in Kents, where, as the court said: "The assessors themselves, in their testimony upon the remand, disavowed consciousness of a specific ratio and portrayed the total picture as the hit-and-miss product of years of inattention." 34 N.J. at 27. In contrast, Piscataway's Board of Assessors adequately expressed their conscious attempt to assess at a common level throughout the Township. As shown above, the evidence reveals consistent adherence to that goal. See Tri-Terminal, 68 N.J. at 410. That these efforts continue is evidenced by the fact that a general revaluation occurred in 1974. As in Tri-Terminal, the taxpayer has failed to show that, relative to the generality of other assessed real property in the municipality, its property is being assessed on a less favorable basis. It has not shown that its property has not sustained the same enhancement in value as other properties in the municipality. See 68 N.J. at 411-412.
In sum taxpayer's proofs failed to demonstrate (1) that there was no common level in Piscataway for the tax years involved and (2) that its share of the total tax burden *284 "substantially exceeds the share allocated to others generally." Kents, supra, 34 N.J. at 33.
In light of the above, the action of the Division of Tax Appeals in applying the Director's ratio is reversed.

True value.
In its brief on appeal the township challenges the Division's finding of true value at $13,065,243 insofar as it found the same true value for each of the years 1971, 1972 and 1973. The township claims that the Division erred in not allowing for inflationary trends in the successive years. The only support proffered for this contention is a Consumer Price Index for the given years, as computed by the U.S. Department of Labor for the New York and Northeastern New Jersey area. This has no persuasive force.
Our task in considering the Division's determination of true value
* * * is to review the evidence and render such decision as it deems proper in the light of that evidence but not to disturb the judgment of the Division of Tax Appeals unless the evidence is persuasive that the administrative tribunal erred. [Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 104 (1952)].
In its finding of true value of $13,065,243 for 1971, 1972 and 1973 the judgment of the Division is supported by sufficient credible evidence in the record. In that respect it is affirmed.

Conclusion.
The matter is remanded to the Division for entry of judgment fixing the assessment at 100% of true value for the tax year 1973.
NOTES
[1] In companion cases Fox Enterprises, Inc. v. Piscataway Tp., (Docket A-674-74) and Franklin Estates, Inc. v. Piscataway Tp., (Docket A-1043-74), the charge of discrimination was also raised by the taxpayers. They rested on the proofs in the instant case. The issue with respect to them will be decided by this opinion.
[2] The coefficient of deviation has been computed according to the formula in the Handbook for New Jersey Assessors, supra.