## SQUARE CIRCLE SPORTSMEN OF CAMDEN CO., INC., PLAINTIFF, v. BOROUGH OF GIBBSBORO, DEFENDANT.

Tax Court of New Jersey

May 29, 1980.

338

*Brandt, Haughey, Penberthy & Lewis* by *William F. Hyland, Jr.* for plaintiff.

*Henry R. Stoinski* for defendant.

LARIO, J. T. C.

Plaintiff appeals from two judgments of the Camden County Board of Taxation affirming 1976 assessments of: Land—$242,-100.; Improvements—$96,900. for a total of $339,000. on one parcel; and, land, alone, in the sum of $25,000. on the second parcel.

The parties stipulated that both appeals be consolidated for trial and they further agreed that for overall valuation purposes the land has an equal per–acre value.

The subject property is owned and occupied by plaintiff, a non–profit sportsmens' gun club, located on the southeast side of Clementon–Gibbsboro Road. The first parcel has 48.43 acres of which 9.5 acres consists of a portion of Bridgewood Lake. It has a frontage of 1275 feet on Clementon–Gibbsboro Road and is bounded on the remaining sides by paper streets. On the northeast it has 1085 feet on Bridgewood Avenue; on the southeast by North United States Avenue for approximately

1945 feet and on the southwest by Burton Avenue for approximately 1718 feet.

The second parcel if a five acre tract which is approximately 730 feet by 250 feet running from the center line of Burton Street paralleling the first tract at its southwest corner.

The improvements, all located on the first parcel, include: (1) the main building of 5,320 square feet used as a club house constructed of block with a large meeting room, kitchen and bar and contains an apartment used by the caretaker; (2) a snack bar of approximately 350 square feet; and, (3) an indoor shooting range of approximately 5,900 square feet which is about ten years old.

The experts for both parties agreed that the highest and best use of the total property is as a residential sub-division and that the income approach to value was not applicable. Because of the unique nature of the buildings involved both experts agreed that sales of similar improvements were not available, therefore, both relied upon the reproduction costs, less depreciation method for the improvements and the market approach for the land.

There was little building growth within the municipality during the years surrounding the assessment date, therefore, there were very few sales available for analysis. A total of five sales were relied upon by both experts in arriving at their respective conclusions of true value, three of which were considered by both. Plaintiff's expert relied mainly upon his sales numbers 3 and 5 (Exhibit P-1) which he adjusted downward to arrive at his value of $2,000. per acre; whereas, defendant's expert valued the land at $5,000. per acre relying mainly upon his sales numbers 1 and 2 (Exhibit D-1).

Sale number 1 of both P-1 and D-1, a sale from Friedman to Donn, consisting of 21.03 acres, was a vacant tract of land located very close to the subject property having direct access to the Gibbsboro-Clementon Road. The Agreement of Sale was entered into conditioned upon the approval of a sub-division. Final closing was completed approximately one year and four months after the execution of the Agreement of Sale. This land

is zoned R–40, Residential, the same as the subject property, which calls for a minimum lot size of 40,000 square feet, a minimum frontage of 150 feet, maximum lot coverage of 10%, a minimum living area of 1,200 square feet plus front, side and rear yard requirements, which results in a requirement of approximately one acre per residence.

Within a 16-month interval between the Agreement of Sale and closing of title, buyer applied for and was granted a major sub–division and variance for 45 building lots. Included in the sub–division are two streets which completely encircle the inner–perimeter of the tract. Since the tract contains only 21.03 acres, even without deducting for the street area, it resulted in the granting of a variance to build more than twice the number of homes permitted by the existing zoning.

There is no question that in this sale the purchaser was buying an approved sub–division of 45 building lots and not 21 acres of raw land. It is immaterial that the buyer was the one who applied for the approval. There is no question but that approved sub–divisions are much more valuable to a developer than raw acreage. For this reason, I conclude that this sale's price is to be given very little weight.

Plaintiff's sale number 3, Portnoy to Rab, is also located very close to the subject property being on the north side of Clementon–Gibbsboro Road and located approximately across from the center of the subject property. This property was sold one year prior to the assessing date for the sum of $9,500. for a tract "217' × 377' irregular; 3.74 acres" which plaintiff calculated at $2,540. per acre. This plot was also vacant land zoned R–40 Residential.

Upon cross–examination, plaintiff's expert confirmed his written report (P–1) that this parcel had a frontage of 217 feet by 377 feet. There was very little testimony offered concerning this sale. There are 43,560 square feet in one acre, however, 217 feet by 377 feet equals only 81,809 square feet which is less than two acres and, if these dimensions. are correct, would increase the purchase price to slightly under $4,575. per acre. In the

event the frontage of 217 feet was correct and it is many sided, with only one side–dimension having been given, it would indicate a very irregular parcel of land which would raise doubts as to the number of building lots available. By reason of the above discrepancy, the lack of thorough testimony concerning all the facts involved in this sale, and the small size of the plot, this sale is to be given practically no consideration.

Plaintiff's sale number 5, Schaffer to Matteo, is unacceptable as a comparable. It is located in a different municipality, Gloucester Township, approximately ten miles away. It "contains a lake, heavily–wooded oak and pine, and some cleared ground near south end of lake." No information was supplied concerning the size or location of this lake of how it and its surrounding–upland compared to the subject property; nor was detailed zoning information made available. Defendant's expert testified that although he was aware of this sale he did not include it within his comparables in that he did not consider it to be a usable sale. Based upon the testimony presented there is no way that an intelligent analysis can be made of this sale.

Sale number 2 of both plaintiff and defendant, Lawrence to CRS Corporation, 21.5 acres at $5,581. per acre is a vacant tract of ground located partly in the defendant municipality and partly in Voorhees Township, being bisected by Old Egg Harbor Road, the Townships' dividing line.

This tract adjoins a residential housing development known as Aluvium, located in Voorhees Township where homes of $75,000. to $100,000. and upwards are being built. From exhibit P–1 it appears that at least 50% of the premises covered by this sale is located in Voorhees Township. The unrefuted testimony establishes that land values and residences in Voorhees Township have a much greater value than comparable property in the Borough of Gibbsboro. In addition, it is rather obvious that this parcel was purchased by the developers of Aluvium as an extension of their successful residential development. Accordingly, I find that this property is substantially more valuable than the subject property.

Plaintiff's sale number 4, which is the same as defendant's sale number 3, Grau to Di Ventura, is a vacant tract of land fronting on Haddonfield–Berlin Road, a well–traveled improved highway within the defendant municipality. It sold for $97,280. and consists of 32.72 acres according to plaintiff's testimony (exhibit P–1) or 32 acres according to defendant's testimony (exhibit D–1), resulting in respective values of $2,973. or $3,046. per acre, depending upon which acreage is correct.

The only reason given by defendant's expert that he did not place much reliance on this sale was that the price made it "suspect". He was unable to cite any facts or basis to support his conclusion that the purchase price was suspicious and should be disregarded.

From the testimony submitted, I find that there was no evidence to indicate that this sale was not between a willing seller and a willing buyer. Based thereon, I find that of all the sales introduced by both parties this sale is the most comparable to the subject property. Therefore, I conclude that the subject property should be valued at $3,000. per acre, rounded out to $145,300.

Plaintiff's expert concluded that the improvements had a total value of $34,300.; whereas, defendant's expert arrived at a total improvement value of $114,700.

Plaintiff valued the reproduction cost of the club house at $97,149.; whereas, defendant valued it at $104,630.

Plaintiff valued the reproduction cost of the snack bar at $5,443.; whereas, defendant reproduced it at $5,793.

Plaintiff gave a reproduction value of $53,100. to the range building; whereas, defendant reproduced it at $57,285.

Plaintiff first added his three replacement costs, coming to a total value of $155,700., and then depreciated the total sum by 78% for physical, functional and economic depreciation, arriving at a depreciated value of $34,300. for his total improvements.

Defendant depreciated the club house by 35%, the snack bar by 35% and the range building by 25%, coming to respective

values of $68,010., $3,766. and $42,964. for total depreciated building values of $114,740.

In arriving at his original construction costs plaintiff applied a value of $18.33 per square foot to the club house, $15.55 per square foot to the snack bar and $9.00 per square foot to the range building. Defendant's expert used figures obtained from the *Real Property Appraisal Manual for New Jersey Assessors*, applying a classification of 20.3B to the club house and he used a cost conversion factor of 2.8%. The snack bar and the range building were both classed as 41–2B to which he also applied a cost conversion factor of 2.8%.

Plaintiff's expert failed to disclose how or where he obtained his per–square foot construction costs. In arriving at his combined physical, functional and economic obsolescence figure, he explained that he arrived at same by taking his estimated effective age of 35 years which he divided by his effective age, plus a remaining economic life of 10 years. He based this opinion on his claim that the buildings were special purpose buildings and would only have utility for storage purposes during construction of residential properties.

Defendant's expert attributed a physical depreciation factor of 35% to the club house and snack bar and a 25% factor to the firing range. He based his claim on the theory that the club house could easily be used and adapted within a residential area as a restaurant and that the other buildings could readily be used for other commercial uses such as storage or warehousing.

I conclude that defendant's method of calculating the original reproduction costs and the depreciation rate claimed whereby he used the *Real Property Appraisal Manual for New Jersey Assessors* is more accurate and persuasive than that of the plaintiff. The plaintiff submitted absolutely no proofs whatsoever to support his respective per square foot prices; nor did he put into evidence any description of the physical depreciation or any other details to support such a high physical, functional and economic depreciation factor of 78%. I, therefore, accept the conclusion of the defendant's expert as to true value for the improvements of $114,740.

I am mindful of the fact that the total result for the improvements is greater than the original assessment; however, since the total assessment found is less than the original total assessment, the full value of the improvements will be included. See *In re Appeals of Kents, 2124 Atlantic Ave., Inc.*, 34 *N.J.* 21, 166 *A.*2d 763 (1961).

Judgment will be entered as follows:

Docket No. L 8574–76

Block 27, Lot 10 and
Blocks 28 thru 34,
Lot 1 of each Block:

| | | |
|---|---|---|
| Land: | $145,300. |
| Improvements: | $114,700. |
| Total: | $260,000 |

Docket No. 8575–76

Block 51, Lots 1A,
1A, 1B

| | | |
|---|---|---|
| Land: | $15,000. |
| Improvements: | – – – – |
| Total: | $15,000. |