SMALL, J.T.C.
In this case I am called on to determine the proper application of discrimination relief under N.J.S.A 54:51A-6 (L.1973, c. 123, commonly known as chapter 123), when the assessment of only one parcel in a multiparcel, single economic unit is challenged.
For 1997, the tax assessment of Block 1005, Lot 3, with a street address of 16 Bleeker Street, in Millburn, was as follows:
Land $ 766,600
Improvements 2,908,400
Total $3,675,000
The plaintiff took an appeal from that assessment to this court pursuant to N.J.SA 54:3-21. After a trial, I concluded that the property was overassessed, applied discrimination relief provided by chapter 123, and reduced the assessment to:
Land $ 766,600
Improvements 2,407,000
Total $3,173,600
This matter is before me on defendant Millburn’s post-judgment motion for reconsideration, pursuant to R. 1:7-4. See R. 8:7 and R. 8:10 with respect to motions brought pursuant to R. 1:7 — 4 in •the Tax Court. The sole basis for defendant’s motion is the application of discrimination relief provided pursuant to chapter 123. The facts, and this court’s findings of fact, are not in dispute.
The subject parcel, the assessment of which was appealed, is one of five parcels owned by plaintiff, located in Springfield and Millburn Townships. Those parcels are described in the table which is found at the end of and is an integral part of this opinion.
After a trial, in a bench opinion on February 5, 1998, I determined that (1) the five separately assessed parcels comprised a single economic unit, and (2) the fair market value of the entire economic unit was $7,325,000. The latter finding was based on an analysis of comparable sales of improved property and of income of comparable properties and a reconciliation of those two deter- *381 ruinations. At this time, neither party challenges or asks me to reconsider these two findings.
Subsequent to my determination of value for the entire economic unit, I was obliged to determine whether the taxpayer was entitled to discrimination relief pursuant to chapter 123. See Passaic Street Realty Assoc., Inc. v. Garfield, 13 N.J.Tax 482 (Tax 1993). Defendant challenges the way in which I applied the chapter 123 test for discrimination.
At trial, the only evidence of value presented for the unimproved parcels was a supplemental report and the testimony of plaintiffs expert. The expert concluded that the value of the vacant land involved in the economic unit, which constitutes the subject property, was $300,000 per acre. I found that the sliver property, one of three Millburn properties, had insignificant value. I found that the value of the second Millburn parcel was $300,000, and that the value of the two Springfield parcels was $264,000, for a total of $564,000.[1] I then subtracted that figure from the gross value of the single economic unit to arrive at a value of $6,761,000 for the subject property. For 1997, Millburn’s chapter 123 ratio was 46.94%, with an upper limit of 53.98%. Comparing the value of the subject property to the assessment of the subject property yielded a ratio of 54.35%, which fell outside the chapter 123 corridor. Accordingly, I multiplied the value of the subject parcel ($6,761,000) by Millburn’s chapter 123 ratio (.4694) to arrive at a proper assessment for the appealed property for 1997 ($3,173,613). See, generally, Passaic Street Realty, supra, 13 N.J.Tax at 485-86.
*382 Millburn Township challenges that calculation and asserts that, since the property was valued as a single economic unit, I was obliged to test that valuation against the aggregate of the assessments of the five parcels constituting the economic unit. That calculation is straightforward when applied to the Millburn properties. Millburn suggests that, in considering the Springfield properties, I could calculate an imputed assessment by (1) taking the original 1997 assessment, (2) dividing it by Springfield’s chapter 123 ratio to get an imputed fair market value, and (3) multiplying that fair market value by Millburn’s chapter 123 ratio for a surrogate assessment, with a comparable chapter 123 ratio (what the Springfield property assessment would have been if determined by Millburn’s assessor). Performing these calculations results in an aggregate ratio which falls within Millburn’s chapter 123 corridor for 1997 and leads to the conclusion that there should be no reduction in assessment of the appealed subject parcel.[2] In other words, since the aggregate fair market value and the aggregate assessments fall within the chapter 123 corridor, no adjustments to any of the five separate assessments need to be made, and in particular, no adjustment to the appealed assessment should be made.
As authority for its proposed calculation, Millburn relies on three cases, Purex Corp. v. Paterson, 8 N.J.Tax 121 (Tax 1986), Mobil Oil Corp. v. Greenwich Tp., 9 N.J.Tax 123 (Tax 1986), and Atlantic City v. Ginnetti, 17 N.J.Tax 354 (Tax 1998), approved for publication April 16, 1998.
In Purex, supra, Judge Kahn held that a taxpayer, having appealed the tax assessments of two parcels which constituted a single economic unit but which were separately assessed, could not *383 withdraw its appeal with respect to one of those parcels. It appeared from the facts that the parcel the plaintiff-taxpayer wanted to withdraw was substantially underassessed. The other parcel, the appeal the taxpayer wished to maintain, appeared to have been overassessed. Despite R. 8:3-9, which provides that “a matter may be withdrawn at any time ...” Judge Kahn ruled that R. 1:1-2 permitted him to relax or dispense with the rules in the interest of justice. He concluded that permitting the withdrawal would cause litigation gamesmanship and would lead to an inequitable result, namely, that the underassessed parcel would remain underassessed, while the taxpayer might achieve a reduction in assessment for the overassessed parcel. He found that the allocation of values as between the parcels was an administrative function, not significantly different from the allocation of assessments between land and improvements. See In re Appeal of Kents, 34 N.J. 21, 34, 166 A.2d 763 (1961); Glen Wall Assocs. v. Wall Tp., 6 N.J.Tax 24, 29 (Tax 1983) (citing N.J.S.A. 54:4-26), rev’d, 99 N.J. 265, 491 A.2d 1247 (1985). Allowing cherry picking, or gamesmanship on the part of a taxpayer (ie., to appeal one but not all parts of a single economic unit) is not appropriate.
Nine months later, Judge Lario, in Mobil, supra, 9 N.J.Tax 123 (Tax 1986), in permitting the withdrawal of the appeal of one parcel, stated:
On appeal of assessments, which have been determined to comprise a single economic unit it is immaterial whether an appeal of the assessments of one of the lots comprising the economic unit has been withdrawn. Once the correct assessment for the entire complex is determined the amount of assessment of the withdrawn lot will be subtracted from the total correct assessment and the balance will be allocated to the lot remaining under appeal. [Citing in a footnote Kearny Leasing Corp. v. Kearny, 6 N.J.Tax 363 (Tax 1984), aff'd, 7 N.J.Tax 665 (App.Div. 1985), certif. denied, 102 N.J. 340, 508 A.2d 215 (1985) ]
[/d. at 127 (emphasis added).!
The cited cases, unlike the case before me, were cases in which all lots, at one time, had been appealed, and thus, were within the court’s jurisdiction. Implicit in defendant-municipality’s argument in the motion before me is that the proper treatment of a single economic unit is, in effect, to take jurisdiction of *384 all the lots, even if they are not appealed. The court has no authority to change assessments of properties not appealed.
The municipality argues that, to compensate for any improper allocation of the values or assessments ascribed to each of the five parcels, the court should make all adjustments to the property which is appealed. If the total assessment against a single economic unit is what matters, and the allocation between lots is an administrative convenience of little relevance, this argument is most persuasive.
In Atlantic City v. Ginnetti, supra, 17 N.J.Tax 354, Judge Eimm determined the assessments of three lots under appeal by first valuing those three lots, as well as a fourth unappealed lot which he determined to be part of a single economic unit. He then compared the aggregate value of the four lots to the aggregate assessments of the four lots, and found that the ratio of assessments to value fell outside the chapter 123 corridor. Next, he applied the chapter 123 ratio to the aggregate value of the four lots to determine the aggregate assessment of the four lots. Since one lot was not under appeal, he subtracted the assessment of that lot from the aggregate assessment of the four lots to determine the appropriate aggregate assessment of the three lots whose assessments had been challenged. Finally, he allocated that assessment to the three appealed lots based on the allocation of the original assessments.
In this case, I initially allocated value and then tested the value allocated to the single appealed lot against the assessment assigned to that lot and found that the ratio of assessment to value fell outside the chapter 123 corridor. In effect, I disregarded the assessments on the other four parcels.
In this case, the net result of accepting defendant’s argument is that parcels found to be underassessed, namely the four unimproved, unappealed parcels, would have their value captured in the assessment of the appealed parcel. This would result in a transfer of assessable value from the four unappealed lots to the appealed lot. In Mobil, supra, and Purex, supra, all of the parcels were in *385 the same taxing jurisdiction, and the assessments of all of the parcels in the single economic unit had been appealed. In this case, the assessment of only one of the five parcels constituting the economic unit has been appealed. If I were to adopt Mill-burn’s argument, there would be a transfer of assessable value from the Springfield properties to the Millburn property. Nevertheless, Springfield would not be harmed, because its assessment would not be disturbed.
My initial approach, in this matter, was simply to allocate value between the properties and to perform the chapter 123 calculation with respect to the value and the assessment of the single appealed property. Because not all of the assessments were appealed, this results in a reduction in the assessment of the appealed property, and a maintenance of the apparently underassessed values of the unappealed properties. As Judge Kahn indicated in Purex Corp. v. Paterson, supra, 8 N.J.Tax 121, this would “create an inequitable result,” Id., at 125, and would “result in a use of the pleading process as a form of gamesmanship.” Id. at 126.
One could argue on taxpayer’s behalf, that when Millburn received notice that the assessment of the appealed parcel was challenged, Millburn could have brought appeals with respect to the other parcels which constitute the single economic unit. (One wonders how Millburn would deal with the Springfield properties and how Springfield would deal with the Millburn properties).[3]
It should be noted that there is nothing in the record in this ease to indicate that the taxpayer was attempting to play any sort of litigational game in challenging only one of the five assessments. To adopt taxpayer’s position might encourage gamesmanship. To adopt Millburn’s position results in a shifting of value and assessment between parcels which constitute a single economic unit, although our courts have said that the proper allocation of *386 values among the components of a single economic unit (at least within a single municipality) is simply an administrative convenience. Purex, supra, 8 N.J.Tax 121 and Mobil, supra, 9 N.J.Tax 123.
The law on this issue is not clear. On reflection, I have determined that Judge Rimm’s approach in Ginnetti, supra, is the better practice, as it better assures that the sum total of the assessments of all parcels constituting the single economic unit is correct. His approach avoids the game playing alluded to in Purex, supra, and is consistent with Mobil’s concern that the gross assessments for all parcels constituting a single economic unit be accurate, even if the values assigned to each parcel might not be precise.
Obviously, the allocations made are usually arbitrary and the bifurcated assessment is not considered binding upon the taxing district, but instead the correct assessment is to be based on the total value of the entire complex. This requirement for separate tax value for each and every lot on a taxing district’s map is a record-keeping method devised by the Director of Taxation, as mandated by the Legislature, to insure that all real property within a taxing district is either assessed or accounted for. N.J.S.A. 54:4-23.
[Mobil,, supra, 9 N.J.Tax at 127].
The complexity introduced by the fact that the five parcels are in two separate municipalities has been accounted for by the two-step process of determining imputed values and surrogate Mill-bum assessments. There is a rough measure of justice in what is being done here. See Ford Motor Co. v. Edison Tp., 127 N.J. 290, 313, 604 A.2d 580 (1992).
Although not argued by Millburn, another calculation to test the assessment of the subject for discrimination under chapter 123 would be to subtract from the value of the entire economic unit found by the court the implicit fair market value of the four unappealed parcels based on their assessments (ie., the values in Column 3 of the attached table.) This calculation avoids the complexity of converting the Springfield assessments to Millbum assessments.
*387 Thus: $7,325,000
Less: ( 408,394)
( 8,735)
( 43,668)
( 17,724)
Equals $6,846,479
The result is the value of the subject for purposes of applying discrimination relief in accordance with chapter 123.
Applying the test in this case yields a result that falls within the chapter 123 corridor.
Assessment $3,675,000 = 53.67% (upper
Value $6,846,479 limit is 53.98%).
The “values” used for the four unappealed parcels are no more accurate than their assessments. For purposes of determining the assessment of a single parcel which is part of a single economic unit where not all parcels are appealed, this is appropriate. My determination of the value of the whole unit cannot be spread among the five parcels, because only one parcel was appealed. By not appealing the other four parcels, the parties are implicitly accepting the accuracy of those four assessments. The appropriate conclusion of this court is the proper assessment of the single lot appealed giving consideration to the assessments of the four unappealed lots. The result is different from what the result would be if the subject was not part of a single economic unit comprising more than one assessable lot.
Thus, three separate calculations testing the assessments of the single economic unit against the value of the entire unit,
(1) Total assessments
Total value of economic unit
(2) Total assessment (converting Springfield assessments to Millbum assessments)
Total value of economic unit
(3) Assessment of subject
Value of subject less implicit value of the four unappealed lots, based on their assessments divided by their municipalities’ chapter 123 ratios,
*388 yield ratios which fall within the chapter 123 corridor and warrant affirmance of the original assessment. The only basis for reducing the assessment of the subject is to ignore the apparent underassessments of the four unappealed lots. In light of Purex, supra, Mobil, supra, and Ginnetti, supra, that is simply wrong.
An appropriate, logical, and fair result would be to grant to this court, by statute or rule, the authority to consider not only the value, but also the assessments of all properties which constitute a single economic unit when one of those parcels is appealed. But see n. 3, supra, and related text. In effect, a statute or rule which says that one part of a single economic unit cannot be challenged, is similar to the decisional law that says that a land assessment may not be challenged independently of an improvement’s assessment (only the entire assessment on a given parcel may be challenged). See Appeal of Kents, supra, 34 N.J. at 34, 166 A.2d 763, and Glen Wall Assocs., supra, 6 N.J.Tax at 29. Absent such a statute or rule, I am persuaded that Millbum’s approach for the application of chapter 123 to a multi-parcel single economic unit in which not all of the assessments have been challenged is a better approach. I am persuaded that any one of the three calculations presented in this opinion is better than the calculations used in my initial determination.
The total assessment of the taxpayer’s property, when looking at the assessments on all five lots, does not exceed fair value.i **[4] The allocation of value among lots may be skewed and is not reflective of the proper allocation of fair value. Within Millburn Township that creates no problem. As for the capture *389 by Millburn, of some of the taxable value of the Springfield properties, Springfield is not harmed, as its assessments were challenged neither by Springfield nor by the taxpayer, and the assessments originally made are maintained.
Unique factual situations cause difficulty in judicial determination. The facts which make this case unique are (1) only one of five parcels comprising a single economic unit was appealed (generally, that is not the case); and (2) the single economic unit exists and is separately assessed in more than one taxing jurisdiction.
For the reasons expressed above, the assessment under appeal will be affirmed. I will sign defendant’s form of order submitted with its motion papers. The previously entered judgment will be voided, and a new judgment affirming the original assessment will be issued.
ATTACHMENT
TABLE PORTION OP JUDGE SMALL’S OPINION IN JAYDOR v. MILLBURN, DKT. NO. 001036-97, DECIDED APRIL 20,1998
Column 3 Column 4 Column 5 Column 6 Column 1 Column 2
Imputed Fail* Assessments Value Deter- Description Market Value of Millburn mined by The Based on As- and Spring- Court sessments * field Lots at (Col.4) Mill-burn Rates Municipality, Assessment Parcel Number & Block/ Lot Number
1. Millburn $3,675,000 Block 1005 Lot 3 $7,829,144 f $3,675,000 1 $3,675,000 ->• $6,761,000= 54.35% U The single eco- The subject nomic unit val- property, locatue of $7,325,- ed at 16 000, less the Bleeker Street, value of parcels Single-story in-2, 3, 4, & 5, dustrial build-yields a value ing of 178,414 of $6,761,000 square feet on for the subject 6.59 acres of property.** land.
Uncontrovert- A one-acre lot ed evidence of located across $300,000 per Bleeker Street acre for one from the sub-acre yields ject property $300,000 for and the main this lot.** parking lot for the subject property. 2. Millburn $ 191,700 $408,3941 $191,700 Block 1004 Lot 21
*390 3. Millburn $ 4,100 $8,7351 $4,100 Block 1005 Lot 9 The court A “sliver” par-found this cel of 3,741 “sliver” parcel square feet of has insignifi- remnant land cant value. and contiguous to the subject property.
4. Springfield $ 34,000 $43,668 tt Block 204 Lot 1 $20,498$ Uncontrovert- Two lots with ed evidence of a total of 34,-$300,000 per 631 square feet acre for 0.88 or 0.88 acre, acre yields contiguous and $264,000 for to the south of both lots. ** the Lot 1 subject property. Steep slope adjacent to Route 78 and probably, not buildable but contribute to improvements on other lots.
5. Springfield $ 13,800 $17,724 tt $8,320$ Block 204 Lot 2
$3,918,600 $8,307,665 $3,899,618 $7,325,000 2 3 $3,918,600* $3,675,000* $7,325,000= $6,846,479= 53.50%$$ 53.67%$$ $3,899,618* $7,325,000= 53.24% $$ The court found the fail* market value of the economic unit was $7,325,000, based on an analysis of comparable sales of improved property and of income of comparable property and a reconciliation of those two numbers.
* Imputed fair market value = Assessed value divided by the chapter 123 ratio of the municipality in which the parcel is located.
* * On reconsideration, the court finds inadequate support for the findings with respect to the value of unimproved land (see slip opinion n. 1).
t The average chapter 123 ratio for Millburn for the 1997 tax year was 46.94%.
tt The average chapter 123 ratio for Springfield for the 1997 tax year was 77.86%.
$ Assessed value based on the imputed fail* market value (Col.3) multiplied by Millbum’s chapter 123 ratio.
$$. The upper limit of Millburn’s chapter 123 corridor is 53.98% for the 1997 tax year.
1. The chapter 123 analysis underlying my initial determination.
2. The chapter 123 analyses proposed by Millburn and two of three analyses which support the conclusion of this opinion.
3. The third alternative chapter 123 analysis which supports the conclusion of this opinion (assessment of the subject divided by value of single economic unit less implicit value of the four unappealed lots derived from their assessments). See pages 386-87 of this slip opinion.

 On reflection, I have determined that it was inappropriate to find value for the separate, unappealed lots, because the five lots constituted a single economic unit. The valuation evidence with respect to the unappealed lots treated the lots as if they were not part of a larger economic unit including improved parcels. Thus, the “comparable sales" of vacant land used to value the unappealed lots were not comparable to unimproved property comprising part of an improved economic unit. Accordingly, based on the evidence before me, I could not, and should not, have found any value for the four unappealed parcels.

 See attached table. Both columns 2 (total actual assessments) and 4' (total actual Millburn assessments with Springfield properties' assessments first divided by the Springfield chapter 123 ratio to determine imputed fair market value based on the Springfield assessments and then multiplied by the Millburn chapter 123 ratio to determine what the Millburn assessments would be) indicate that the aggregate analysis yields a ratio that falls within the chapter 123 corridor, and accordingly, no discrimination relief would be appropriate.

 Under N.J.S.A. 54:3-21, "a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district or by the assessed valuation of property in another taxing district in the county, may ... appeal____” (emphasis added). Millbum and Springfield are not in the same county. Millbum is in Essex County; Springfield is in Union County.

 Examination of the figures on the accompanying table indicates that the aggregate value of the subject properties is almost $1,000,000 less than the implicit fair market value of the five combined assessments. Nevertheless, my conclusion is that there should be no reduction in the assessment of the appealed property. This is a result of the 15% corridor provided by chapter 123. Although it appears that the aggregate assessments are too high, they are too high by less than 14%. The statute (N./.S.A..54:51A-6) provides no relief unless the assessments are more than 15% too high.