TOMKINS TIDEWATER TERMINAL, PLAINTIFF, v. TOWN OF KEARNY, DEFENDANT.

Tax Court of New Jersey

November 5, 1980.

*Mandelbaum & Mandelbaum* for plaintiff (*David Mandelbaum* appearing; *Ralph Neibart* on brief).

*Norman A. Doyle, Jr.* appearing for defendant.

HOPKINS, J. T. C.

This case involves appeals from judgments of the Hudson County Board of Taxation as to the assessed values of real property known as Block 289, Lot 1, in the taxing district of Kearny, for the tax years 1976, 1977 and 1978. The original assessments and judgments of the Hudson County Board of Taxation for all tax years involved were as follows:

|  | Original Assessment | County Board Judgment |
|---|---|---|
| Land | $ 593,700 | $ 593,700 |
| Improvements | 1,739,300 | 1,652,300 |
| Total | $2,333,000 | $2,246,000 |

The parties have agreed as follows:

1) The fair market value of the property as of the assessment date for each of the tax years was as follows:

| Land | Improvements | Total |
|---|---|---|
| 1,100,000 | 2,250,000 | 3,350,000 |

2) There was no common level of assessment existing in the municipality for any of the tax years.

3) The Director's published ratio of assessed to true values should apply and those ratios are as follows:

| | |
|---|---|
| 1976 | 55.93% |
| 1977 | 57.08% |
| 1978 | 49.00% |

The dispute remaining turns upon the application of Chapter 123, § 1, of the Laws of 1973 which became effective commenc-

ing with the tax year 1978. Plaintiff contends that Chapter 123 requires the Tax Court to revise the taxable value of the property for 1978 by applying the stipulated Director's average ratio for 1978 to the true value of the property. The stipulated ratio for 1978 is, in fact, the ratio published by the Director for use in applying Chapter 123 for the tax year 1978. Defendant's position is that the 1978 ratio should be averaged with the Director's average ratios for the prior tax years involved in these proceedings and that the resulting average ratio should be applied to all years involved.

Plaintiff, in taking the position that the ratio computed in accordance with Chapter 123 for the tax year 1978 must be applied for that year, has stated that it will be satisfied to have either the Director's average ratios or the average of those ratios applied for the prior two tax years, in the court's discretion.

The issues are whether the court is required to average the Director's average ratios where there are different ratios for two or more tax years and, secondly, if the court does average the Director's ratios, can the ratio prescribed for application of Chapter 123 be included so that the average of all ratios will be used for 1978 rather than the Director's average ratio for said year.

The use of the Director's ratios in remedying discriminatory tax assessments was first given a legal foundation in *Appeal of Kents*, 34 *N.J.* 21, 166 *A.2d* 763 (1961). Our Supreme Court held that a taxpayer may introduce in evidence, and rely upon, the municipality's average assessment ratio as determined for purposes of intermunicipal equality by the State Director of Taxation. The Court recognized that the average ratio was not an ideal instrument, since individual ratios within the taxing district vary widely, but felt that "[m]athematical perfection in taxation is unobtainable, and hence relief should not be denied merely because the result lacks absolute precision." [Id. at 32, 166 *A.2d* 763]

The Court also stated:

> Where, as here, the record of sales indicates there is no common level for all or any class of real property and the assessors disavow any effort to achieve one, the average ratio should be deemed sufficient evidence of the level to which reduction should be granted in the absence of circumstances indicating that the average should be modified for that purpose. *The trier of facts may properly consider any weakness which may appear, as, for example, a paucity of sales in the municipality concerned or some imbalance caused by unusual experience. To that end, consideration may be given to the average ratio of other years and to such appraisals of properties as the trier of facts may feel to be necessary to assure that the average ratio is not grossly deceptive as a fair gauge of the ratio of assessment to market value.* Pretrial conferences would be useful to delineate the area of proof. [at 31–32, 166 *A.*2d 763; emphasis supplied]

Defendant's position is that the averaging of the Director's average ratios has been a procedure mandated by appellate courts for multi–year appeals. In support thereof it cites the cases of *New Brunswick v. Div. of Tax Appeals*, 39 *N.J.* 537, 541, 189 *A.*2d 702 (1963); *Feder v. City of Passaic*, 105 *N.J.Super.* 157, 162, 251 *A.*2d 457 (App.Div.1969); *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65, 76, 208 *A.*2d 153 (App.Div.1965).

In *New Brunswick, supra*, the available sales data reflected a Director's average ratio for all real property to be 33.39 percent for 1958 and 30.05 percent for 1959. The Division used 33⅓ percent for each year. In commenting on the taxpayer's complaint that the Division did not use 30 percent for the 1959 year in accordance with the average ratio as found by the state Director of Taxation, the court stated that the Division's finding was sound and, as a practical matter, there must be a large measure of stability in the assessment of property. However, it should be noted that 33⅓ percent was not the average of 30 percent and 33.39 percent. It was a figure used by the trier of facts consistent with the procedure detailed in the portion of the *Appeal of Kents*, previously quoted.

The opinion in *Feder, supra*, reveals that the Appellate Division rejected the use of an average of the "official" ratios because it regarded the Director's 1964 ratio of 94.33 percent, based upon 3 years' sales, as unreliable. The Appellate Division used a ratio of 83.94 percent based solely on 1964 sales and noted that its figure was closer to the 1965 and 1966 approved ratios as well as the official ratio for 1967. Accordingly, rather than take

an average of the Director's average ratios, the court averaged ratios which included a recomputed ratio for 1964. Again consistent with *Appeal of Kents, supra,* the averaging procedure, as utilized by the trier of facts, was not disturbed other than to substitute a new average ratio for 1964.

Defendant's reliance upon *Samuel Hird & Sons, Inc., supra,* is misplaced. That opinion shows that, although in the proceedings before the Division of Tax Appeals both parties conceded the property had the same true value in 1961 and 1962, in which years the average ratios were 25.37 percent and 21.25 percent, respectively, the Division allowed assessments of $159,968 and $97,600 for the respective years 1961 and 1962 to remain because neither side had "borne its burden of proof". The Appellate Division remanded the case because the condition of the evidence before the Division did not require this anomalous result. It directed that the Division fix the proper identical assessments for the property for both tax years. However, of importance in understanding the remand direction is the further statement of the court as follows:

> ... What we emphasize here is that there was enough substantial and competent evidence before the Division to have enabled it to ascertain and determine the true value of the property under appeal and to fix a common assessment for the property for both of the tax years in question, based upon a suitable equalization factor, rather than to reject all the proofs as worthless and leave the property assessed at the divergent figures of $159,968 for one year and $97,600 for the next, in the face of the conceded fact that the true value thereof was the same for both years. [at 74, 208 *A.*2d 153]

Analysis of all those cases cited by defendant clearly indicates that they were consistent with the philosophy expressed in *Appeal of Kents, supra,* that where ratios are to be used to correct an imbalance in the assessment, the trier of fact may, in his discretion, properly consider weaknesses such as paucity of sales or some other imbalance. Where such may occur, consideration may be given to the average ratio of other years and such appraisals of properties as the trier of facts may feel necessary to assure that the average ratio is not grossly deceptive as a fair gauge of the ratio of assessment to market value. Further, there must be a large measure of stability in the assessment of property. *New Brunswick, supra.*

■ In view of the above, the averaging of the Director's ratios is peculiarly within the discretion of the trier of fact.

Recognizing that the averaging of the Director's ratios may be appropriate in certain circumstances, particularly where the objective is stability of assessments, the question then remains whether such averaging can be effected where the applicable ratio for one of the years is mandated by Chapter 123 of the Laws of 1973, as amended.

The history of the discrimination issue, which Chapter 123 attempts to remedy, will help understand the problem.

Both the Supreme Court of the United States, in *Hillsborough Tp. v. Cromwell*, 326 *U.S.* 620, 66 *S.Ct.* 445, 90 *L.Ed.* 358 (1946), and the New Jersey Supreme Court, in *Baldwin Construction Co. v. Essex Cty. Bd. of Taxation*, 16 *N.J.* 329, 108 *A.2d* 598 (1954), recognized that a property owner had a federal constitutional right to relief from a discriminatory assessment. Later, in *Appeal of Kents, supra,* the New Jersey Supreme Court recognized that an aggrieved taxpayer had a right under our state constitution and our state tax statutes which the courts should enforce.

In commenting upon the relief to which a taxpayer may be entitled, the court noted that mathematical perfection in taxation is unobtainable and, hence, relief should not be denied merely because the result lacks absolute precision. Further, the court stated that there was then pending in the legislature a proposed statute which would use the unweighted average ratio as the central figure in a remedy for unequal taxation of real property. However, it stated, "until some better technique appears or some other suitable one is provided by statute, we are satisfied to utilize the average ratio in cases such as the one before us." [34 *N.J.* at 33, 166 *A.2d* 763]

Chapter 123 of the Laws of 1973 was the legislative response to the problem of unequal taxation through discriminatory assessments. The Act was postponed until 1978 in order to grant local property tax assessors sufficient time to remedy discriminatory assessment practices. Chapter 123, as implemented, in part, by *N.J.S.A.* 54:1–35a, provided as follows:

(a) The "average ratio" of assessed to true value of real property for a taxing district for the purposes of this act shall mean the unweighted, unclassified, arithmetic average as determined by the Director of the Division of Taxation from the latest 1 year study data compiled by the director for the purposes of P.L.1954, c. 86 (C. 54:1–35.1 et seq.), as of October 1 of the year preceding the tax year as revised by the Division of Tax Appeals.

The above provisions were amended effective for the year 1979 so as to eliminate the required use of an unweighted, unclassified, arithmetic average.

Chapter 123 is specific in its detailed statement as to the ratio to be used. The courts' use of other ratios for years prior to 1978 was the judicial response to the failure of the legislature to statutorily provide a method to correct discriminatory assessments. That situation no longer prevailed as of the tax year 1978. As stated in *Kents*, the average ratios of the Director could be used until "some other suitable one was provided by statute." Chapter 123 specifically provided a ratio which filled that void.

Not only is Chapter 123 specific in what ratio shall be used, it is also specific in its direction to the Tax Court as to its use. See *N.J.S.A.* 54:2–40.4 which, as amended, reads as follows:

(a) Whenever the *tax court* is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it *shall enter judgment revising* the taxable value of the property by applying the average ratio to the true value of the property except as hereinafter provided. [emphasis supplied]

■ Accordingly, commencing with the year 1978, where discrimination is shown by application of Chapter 123, the average ratio provided by statute must be used absent a showing that its use would continue unconstitutional discrimination. Defendant does not take this latter position.

■ In view of the above, this court cannot average the ratios for the years 1976 and 1977 with the Chapter 123 ratio stipulated for 1978. While the averaging of the years 1976 and 1977 is within the discretion of the court, it cannot be said that such averaging would stabilize the assessment of the subject property where, as has been shown, the assessment for 1978 is a different amount.

On the basis of the stipulation of the parties and the conclusions reached in this opinion, the assessed values shall be as follows:

|              | 1976        | 1977        | 1978        |
|--------------|-------------|-------------|-------------|
| Land         | $ 615,230   | $ 627,880   | $ 539,000   |
| Improvements | 1,258,425   | 1,284,300   | 1,102,500   |
| Total        | $1,873,655  | $1,912,180  | $1,641,500  |

The Clerk of the Tax Court is directed to enter judgments in accordance with the above.