LARIO, J. T. C.
Plaintiff appeals from judgments of the Union County Board of Taxation dismissing its appeals from local real property assessments for the tax year 1978 and 1979. The property in question is a shopping center situated on the south side of Springfield Avenue, Lone Pine Drive and Snyder Avenue, containing 9.121 acres.
For the tax year 1978 the property was designated as Block 701, Lots 3 and 4. Lot 3 was assessed at: Land — $147,300; Improvements — $336,300; Total — $477,600. Lot 4 was assessed at: Land — $120,300; Improvements — $140,700; Total — $261,000, giving both lots a total assessment of $738,600.
For the tax year 1979 the two assessments were combined into a single line-item assessment reflecting the same figures, resulting in an assessment of: Land — $267,600; Improvements— $471,000; Total — $738,600.
The separation of the property into Lots 3 and 4 is not in any way related to the physical makeup of the property. The parties agreed for the purposes of this hearing that the two lots should be combined as a single assessment for the tax year 1978, as was done for 1979, and the two lots should be valued as a total valuation for the entire property; therefore, a consent order was entered to reflect this stipulation. It was also agreed that both years be consolidated for trial.
*441 The land is irregular in size, improved with a neighborhood shopping center consisting of a one-story building without basement, which contains a large store, formerly built for an A & P outlet (and now occupied by Drug Fair), and six smaller satellite stores, all of which were erected in 1966. There is also a one-story brick bank building separated from the stores and operated as a drive-in bank built in 1976.
The entire plot has a frontage of 185 feet below the grade of Springfield Avenue, a frontage of 463 feet on Snyder Avenue and a depth on the west side of Lone Pine Drive of 678 feet, and it is 706 feet in five courses across the rear line.
Plaintiff’s expert valued the total property at $880,000 for 1978 and $875,000 for 1979. In arriving at his true value plaintiff’s expert relied solely upon the capitalization method, stating this was the only logical approach since shopping centers of this type are bought and sold on the basis of the income they produce.
Defendant’s expert concluded that the subject property had a true value of $1,304,000 as of October 1, 1977, using a mixed combination of all three usual methods of appraisal. He did not value the property separately for the tax year 1979. He stated that in preparing his appraisal it became apparent to him that the property should be regarded as a whole and that the lot lines appearing on the tax map for 1978 were arbitrary and did not relate to the use of the property; nevertheless, he considered the property as being several different pieces, dividing it into three sections: the shopping center, which he valued by all three accepted methods; the bank property, which he valued by the market method for land and reproduction method for the improvements, and, an alleged “unused” portion of the land, which he valued by the market method.
All real property must be assessed pursuant to N.J.S.A. 54:4 ■ 23, which provides that the assessor shall “determine the full and fair value of each parcel of real property ... at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1.... ”
*442 The search is for the true value of the property — specifically the price a willing buyer would pay a willing seller. Consideration may be given to reproduction, sales of comparable property and to rental income. New Brunswick v. Tax Appeals Division, 39 N.J. 537, 543, 189 A.2d 702 (1963). There is no single doctrinaire approach to valuation of real property. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 72, 208 A.2d 153 (App.Div.1965). “The answer depends upon the particular facts and the reaction to them of experts steeped in the history and hopes of the area.” New Brunswick, supra at 544, 189 A.2d 702.
Defendant’s expert admitted that the property should be regarded as a whole, a conclusion which is justified. The property is owned and operated as a single unit. This neighborhood shopping center would certainly be sold as a single unit. Unlike a unique special purpose building which is normally owner-occupied, the subject property is such that probably the only interested purchaser would be an investor. This type of buyer certainly would not be interested in any other method of calculating the value of this property except by the capitalization method and certainly he would not employ the method utilized by defendant’s expert in arriving at his estimate of true value. I cannot accept defendant’s proposal that this property should be divided into three separate parcels and valued by different methods of appraisal. I agree with plaintiff’s contention that property of this type is bought and sold as a- total unit on the basis of its net income.[1]
In addition, I attribute very little weight to defendant’s market and reproduction approaches. He cites as his basis for his market value of the seven-store section a single sale of a nearby shopping center consisting of 4.8 acres which sold in 1974 *443 for $800,000. He appeared to have very little personal knowledge concerning this sale, having secured his information concerning the deed transaction from the assessor’s office. Since his information concerning the parties was incorrect, I cannot understand how he could have concluded that this was a bona fide, arm’s-length transaction. In attempting to utilize this transaction, he proceeded to adjust the sale 7% for time difference; 80 cents a square foot for lack of sprinklers; $5,000 an acre for land shape and access, and 15% of the adjusted price for economic and functional obsolescence. He did not fully explain the basis for the figures and percentages he used. He then proceeded to divide his adjusted sales price by the “gross leasable area” square footage to arrive at a square footage adjusted value of the sale. He then multiplied this result by the entire square footage of the subject shopping center. The proposed comparable is both a one and two-story building with a basement, whereas the subject property is one floor without a basement.[2] I find that this sale is not a reasonable comparable to establish the subject property’s value.
Evidence of comparable sales is effective in determining value of property for purposes of taxation only where there is a substantial similarity between the properties so as to admit of reasonable comparison. Erie R. System v. Walsh, 26 N.J.Misc. 81, 93, 57 A.2d 217, 224-225 (Div.Tax.App.1948).
Whether there is substantial similarity between an offered comparable sale and the property being valued is a question of fact. See Laing v. United New Jersey R. & C. Co., 54 N.J.L. 576, 579, 25 A. 409 (E.&A.1892).
Concerning defendant’s reproduction costs for the seven stores, he allocated $24 a square foot as his base and then *444 depreciated it 20% for age and 20% for economic and functional obsolescence. When asked the basis of his figures he responded it came from his experience, without any further explanation.
His market value for the land was $75,000 an acre; again, however, he failed to set forth the basis of his opinion. He did not cite in his report, nor did he testify to, any comparable sales to justify his conclusion.
The weight to be given an expert’s opinion depends upon the facts and reasoning which form the basis for that opinion. In re Port of New York Auth., 28 N.J.Super. 575, 581, 101 A.2d 365 (App.Div.1953); Dworman v. Tinton Falls, 1 N.J.Tax 445, 458 (Tax.Ct.1980). I do not have before me any facts or reasoning upon which defendant’s expert relied in arriving at his opinion of value for either his reproduction value or the market value of the land; therefore, I can give no probative value to these portions of his appraisal.
Defendant’s expert further claimed that the shopping center had four surplus acres. His main basis for this contention was that the zoning ordinance in existence for this tract provides for a maximum coverage of land of 35% and the present coverage is actually less than 10%. He calculated that three acres of grass plots and one acre of parking space were excessive.
Property to be assessed, whatever may be its character, is to be taken and valued in the actual condition in which the owner holds it. Stevens Inst. of Technology Trustees v. State Board &c., 105 N.J.L. 99, 101, 143 A. 356 (Sup.Ct.1928), aff’d 105 N.J.L. 655, 146 A. 919 (E.&A.1929). Property should be assessed in the condition in which it is utilized and the burden is on the person claiming otherwise to establish differently. Highest and best use does not necessarily require that a property should be developed with improvements to the maximum coverage permitted by law. More important, it must be established that any proposed addition is economically feasible.
Highest and best use for land is the use that, at the time of the appraisal, is the most profitable likely use. *445 In the central business districts of most large cities there are parcels of land devoted to surface parking lots. In an area unusually characterized by scarcity of land and high use density, utilization as a parking lot would seem to be the antithesis of highest and best use. However, consideration of all factors involved may indicate that such use is, in this case, and at this time, a most profitable interim use because the supply of land already devoted to characteristic central business district uses exceeds current demand. [The Appraisal of Real Estate, 43 and 44]
The satellite store formerly occupied by Ruffles Curtains, containing 1680 square feet, had been vacant for the full two tax years in question. In addition, there was testimony that vacancies existed in the nearby Pood Town Shopping Center, all of which indicates that for the tax years in issue there is not sufficient evidence to conclude that additional improvements would be economically feasible. I find as a fact that defendant has failed to establish that there existed any surplus land which should be assessed separately.
As I have previously concluded, the method that most likely would be utilized by a willing seller and a willing buyer to arrive at the market value of the property under appeal is the capitalization method. Plaintiff found a stabilized economic rent of $111,300 for the seven shopping stores and $36,000 for the bank premises for both years. Defendant estimated the economic rents for the shopping stores to be $123,458; however, he did not capitalize economic rents for the bank, but instead gave to it a reproduction value of $249,400 and added a land value of $100,000.
The two experts’ income and expenses for the stores are rather close. The basic differences appear to be that plaintiff’s expert failed to fully calculate that the existing leases were minimum rentals. In addition, defendant produced testimony that the liquor store located therein is owned by one of plaintiff’s principals, from which it can be reasonably inferred that the actual rent reported for this store is below its true rental worth. I find that the economic rentals should be $123,458 for both years, from which should be deducted a vacancy factor of 4%. Plaintiff estimated his operating and fixed expenses basically upon actual costs, which he adjusted for each item for each *446 year, resulting in expenses of $25,897 for 1978 and $27,497 for 1979. Since plaintiff’s expert utilized the same stabilized rental for both years, to be consistent he should have utilized the same stabilized expenses for both years. I consider defendant’s use of a management commission of 6% plus a 15% estimate for the balance of operating and fixed expenses to be more representative of the economic costs for shopping centers of this type. Based thereon, I find the net income from the shopping store section to be capitalized is $93,624 for both years.
The bank-lessee is presently in possession under a ground lease of $14,000 a year. Plaintiff valued the lease based upon hypothetical economic rents for the improvements which he added to the ground rent, and in support thereof he placed in evidence four comparable bank rentals ranging from $10.50 to $12.75 per square foot. Defendant did not make any effort to capitalize the total of the ground rent plus an economic rent for the improvements. Instead, he relied solely on the reproduction method, claiming the bank is a special purpose building.
Although this improvement is a bank, it is not an old-fashioned, architecturally-designed bank with a limited use. Nor is the building “over-built,” as was claimed in Bostian v. Franklin State Bank, 167 N.J.Super. 564, 570, 401 A.2d 549 (App.Div. 1979), wherein all the experts agreed that the proper method of valuation for that particular building was the reproduction method. The subject building in question is a one-story modern building which can very easily be converted to other commercial uses. I see no reason why this building could not easily be placed on the rental market; therefore, the average buyer and seller would determine its value by means of its potential economic net income.
I note further that even if I were to accept defendant’s expert’s claim that the reproduction method was the proper yardstick to value this building, I would be unable from his testimony to ascertain the correctness of his opinion. He stated that he developed his cost approach from the New Jersey Appraisal Manual; however, he again failed to give any detailed *447 specifications and constructive facts to form the basis of his costs. Unlike the detailed breakdown given in Bostian, supra, this expert essentially testified to conclusions.
No plans or specifications were introduced or referred to, nor was a detailed description given to establish the building’s dimensions, structure and materials used. In ITT Cont’l Baking Co. v. East Brunswick Tp., 1 N.J.Tax 244 (Tax Ct.1980), this court, in noting that the difference in value produced by a fire-proof, structural-steel frame building and a masonry or reinforced concrete building was approximately 27%, held:
Although experience and judgment are necessary in the determination of a particular classification, the class of a building must primarily be determined upon the building specifications given for the class. Real Property Appraisal Manual tor New Jersey Assessors, 1-77 (3 ed. 1978). [at 248]
From the facts in this record there is absolutely no basis upon which this court could make a reasonably accurate determination of this building’s reproduction value as of October 1, 1978 and 1979. In re Port of New York Auth., supra.
In Frater Corp. v. Tax Appeals Division, 80 N.J.Super. 427, 194 A.2d 11 (App.Div.1963), it was held:
We are satisfied and we hold that the Real Property Appraisal Manual for New Jersey Assessors promulgated by the Division of Taxation in 1955, while intended to serve as a guide for those charged with the assessment of real property, was not intended to preclude the use by the Division of Tax Appeals of other established and accepted means of arriving at the true value of real property, [at 432, 194 A.2d 11]
In addition to his reproduction cost for the bank building, defendant’s expert gave a value of $100,000 for the one acre of land attributable to the bank. He did not cite or testify to any land sales to support this alleged $100,000 an acre valuation, nor did he explain why he valued this portion of land at $25,000 an acre greater than the contiguous land as stated by him in his prior testimony.
I find that a prospective purchaser would not attempt to value this building by the reproduction method but instead would measure its sales price by ascertaining its economic rental value. Based thereon, I find that plaintiff’s method of valuing the bank is the acceptable method for this property. Plaintiff’s *448 expert accepted the total of the actual ground rental, to which he added a hypothetical improvement rental in arriving at his true value; therefore, the economic rent of $36,000 a year, without any deductions for expenses except taxes, shall be capitalized.
Plaintiff’s expert utilized a capitalization rate of 12.96% [3] for 1978 (return 10.59% and taxes 2.3%) and 12.867%[4] for 1979 (return 10.59% and taxes 2.27%).
Defendant’s expert used 12.89% attributable to land and 14.89% [5] applied to the building for the year 1978. No rate was determined for 1979.
I find the capitalization rate components used by plaintiff’s expert to be a reasonable and accurate reflection of the demands of the market.
Based upon the above findings, the true value of the subject property is calculated as follows:
1978
Net income to be capitalized $ 129,624
Capitalize at 12.967 $ 999,645
Rounded to $ 1,000,000
1979
Net income to be capitalized $ 129,624
Capitalize at 12.867 $ 1,007,414
Rounded to $ 1,007,500
*449 The taxpayer has requested this court to apply the remedy afforded by N.J.S.A. 54:2 — 40.4, commonly referred to as chapter 123. I find that the ratio of the assessed valuation of the subject property to its true value for each of the years under appeal exceeds the upper limit of the common level range. Therefore, for the tax year 1978 the State Director’s unweighted arithmetic average ratio for Berkeley Heights Township, which was 58%, will be applied. Since the true value found for 1978 is $1,000,000, applying this ratio produces a total assessment of $580,000.
For application to the tax year 1979, chapter 123 was amended to require the use of the Director’s weighted average which, for Berkeley Heights Township, was by coincidence also 58%. Application of this ratio to the property’s true value of $1,007,500 for 1979 produces a total assessment of $584,350.
By reason of the stipulation and order entered at the beginning of trial regarding Lots 3 and 4, and being mindful of the fact that the allocation of assessments to land and improvements is normally an administrative process, In re Appeals of Kents, 34 N.J. 21, 34, 166 A.2d 763 (1961), the final assessments determined will be arbitrarily allocated; however, such allocation shall not be presumptive of a correct apportionment of true value in any subsequent proceeding.
Judgment will be entered as follows:
1978
Lot 3 Lot 4
Land $110,000 100,000
Improvements $250,000 120,000
Total $360,000 220,000
*450 1979
Land $210,000
Improvements $374,350
Total $584,350

 In Wayne Mall Inc. v. Wayne Tp., 2 N.J.Tax 1, 13 (1980), where the property under this appeal was a mall improved with three separate structures, this Court accepted both experts’ opinion that the greatest emphasis should be upon the economic approach rather than the cost analysis approach.

What portion of this property was considered as “gross leasable area” was not explained nor did he make any adjustments for these differences in construction. By reason of the above-stated discrepancies and the number of adjustments required, any resulting “adjusted” square-footage value is nothing more than a guess entitled to little or no weight.

Assume the availability of 75%-93A% mortgage for 20 years, the equity position to earn 1272%. Assume a 15-year holding period. During the holding period the outstanding mortgage balance will decline, with a corresponding increase in the equity position.

The difference in rate is the respective change in taxes for the two years.

Capitalization Rate: 1st mortgage, .75 x 10% = .075
Equity rate, .25 x 12% - .030
Return . 105
Recapture .020
Taxes .0239
Total .1489