LASSER, P.J.T.C.
Taxpayer contests the 1987 real property tax assessment on an industrial property located on Route 523 in Raritan Township, and shown as Block 17, Lot 3 on the tax map of the taxing district. The assessment in issue is:
Land $ 1,951,500
Improvements 15,011,900
Total $16,963,400
Taxpayer has appealed directly to the Tax Court pursuant to N.J.S.A. 54:3-21. A municipal-wide revaluation was adopted for the taxing district for 1987 at 100% of value. Valuation only is in issue.
The subject property is comprised of an attractive industrial and warehouse building, containing approximately 500,000 square feet, on an irregularly-shaped parcel of land which, as testified to by the experts, has an area as follows:
*204 Taxpayer Taxing District
Area between floodway line and river 33.9 acres 40 acres
Area between floodway line and 100-year flood plain 17.3 acres —
Area of Jersey Central Power & Light Co. easement for power lines 3.3 acres
Developable area 55.3 acres 68.3 acres[1]
Total area 109.8 acres 108.3 acres
The building area was described by taxpayer’s appraisal expert as:
Use Square foot area Date of construction
Office space 1st floor 3.725 1963
2nd floor 3.725 1963
Production area 1st floor 109,630 part 1963; part 1974
2nd floor 37,990 part 1963; part 1974
Warehouse 351,480 part 1963, 1968, 1972, 1975
Total square foot area 506,550
Taxing district’s appraisal expert testified that the building area was approximately 508,000 square feet, with approximately 19% office, 24% manufacturing and processing and 57% warehouse area. I find that taxpayer’s expert’s information concerning the area of the land and the improvements is more reliable.
The building was originally built in 1963, with additions constructed in 1968, 1972, 1974 and 1975, as follows:
*205 Year Square foot area Use
1963 170,200 office & production
1968 65.300 warehouse
1972 72.300 warehouse
1974 37,750 production
1975 161,000 warehouse
506,550 Total square foot area
The property is improved with three freight elevators, 34 truck-loading bays, an overhead conveyor system, three 15,000-gallon fuel tanks, a 250,000-gallon underground water storage tank, an exterior water tower, a 300-vehicle paved and lighted parking area and a 5,000 KVA electrical power system ample to accommodate the manufacturing processes carried out in the building. The building is partially sprinklered. The office and laboratory areas and portions of the production area are air-conditioned. A railroad siding serves the property. The property is located near Routes 31 and 202, but travel over local roads is necessary for access to these highways.
Taxpayer’s appraisal expert valued the property using the three traditional valuation approaches, cost, sales comparison and income. Taxing district’s appraisal expert valued the property by the cost and sales comparison approaches.
In their cost approach valuations, taxpayer’s expert relied on the Marshall Valuation Service, and taxing district’s expert used the Real Property Appraisal Manual for New Jersey Assessors.
Taxpayer’s appraisal expert valued the 55.3 developable acres at $12,500 an acre based on five comparable land sales. He valued the 11.5 acres between the floodway limit and the 100-year flood elevation line and the 5.8 acres north of Route 523, a total of 17.3 acres, by applying a 50% discount, resulting in a value of $6,250 an acre. He valued the 37.2 acres within the flood plain, in the river and encumbered by the utility easement, at $500 an acre. These values totaled $817,975 for *206 the entire parcel of land, which he rounded to $820,000. Taxing district’s expert used ten land sales to estimate the value of the land at $22,500 an acre for 68.8 developable acres and $5,600 an acre for 40 acres in the flood area. This totaled $1,760,750 for the entire parcel of land, which he rounded to $1,761,000. The resulting value estimates of the two experts by the cost approach are:
Taxing Taxpayer District
Reproduction cost of building $15,901,720 ($15,900,000 rounded) $15,511,431
Less physical depreciation $ 5,880,000 [2] $ 2,094,044
(36.98% overall) (8.5% physical dep.
Less functional obsolescence $ 580,000 (5.8%) & 5% functional obsol.)
Net condition $ 9,440,000 $13,417,387
Site improvements $ 1,043,000 $ 726,965
Less external obsolescence $ 1,657,000
Improvements value $ 8,826,000 $14,144,352
Land value $ 820,000 $ 1,761,000
Total value $ 9,646,000 $15,905,352
In his sales comparison approach, taxpayer’s expert used sales of seven properties located in Edison, Holmdel, South Brunswick, Linden, Woodbridge and North Brunswick. These sales, which occurred between April 1983 and December 1985, were of properties ranging in size from 383,000 to 1,411,868 square feet and in sales price per square foot, land and building combined, from $10.14 to $22.09. After this expert adjusted these sales prices for time, size, location and physical condition, *207 they reflected a sale price for the subject ranging from $13.29 to $18.72 a square foot. This expert concluded that the subject property had a market value of $17 a square foot and a total value by the sales comparison approach of $8,611,350 (506,550 sq. ft. X $17), which he rounded to $8,610,000.
In his income approach, this expert used five comparable rentals of properties in Cranbury and Edison, New Jersey and three of properties in Pennsylvania, with leases dating between February 1984 and February 1987, for five- and ten-year lease terms, with leased areas ranging from 134,000 to 350,000 square feet and rents ranging from $2 to $3.32 a square foot. These rentals were adjusted for area, time, age and location and reflected a rental value for the subject property ranging from $2.04 to $3.05 a square foot. From these rentals, this expert concluded that the rental value of the subject was $3 a square foot net overall, or $8.50 net a square foot for office space, $2.75 net a square foot for the plant portion on the first floor and $1.50 net a square foot for the second floor plant portion. He deducted a vacancy allowance of 10%. In order to apply the income approach to this single-occupancy facility, the expert was of the opinion that the property would have to be converted to multi-tenant use and that it would take a period of three years to fully lease the building. Operating expenses and capital expenses during the lease period were deducted. The net operating income for the four-year lease-up period was discounted for present value at a rate of 14%, and the fourth year was capitalized at 10% and discounted to present value. The cost of construction to convert the building to multi-tenancy was deducted, and this expert concluded from these calculations that the value by the income approach was $6,885,000. This expert placed most reliance on the sales comparison approach and concluded that the value of the subject property is $8,700,000.
Taxing district’s expert also relied on the sales comparison approach, using four sales, one in Bridgewater Township, one in Franklin Township and two in Branchburg Township, with sale dates between May 1984 and December 1986, square foot *208 areas ranging from 51,600 to 527,000 square feet and per-square-foot sale prices for land and building combined ranging from $28.94 to $32.46. When adjusted for time, these sales indicated a sale price for the subject ranging from $27.64 to $38.28 a square foot. This expert testified that, after considering size, location and condition, he placed most weight on the Bridgewater and Franklin Township sales and estimated the value of the subject property at $31 a square foot for 508,000 square feet, for a total value of $15,748,000, which he rounded to $15,750,000. This expert placed most weight on the sales comparison approach and concluded that the value of the subject property as of October 1, 1986 is $15,750,000.
Both experts concluded that the existing use is the highest and best use of the subject property. The subject property is a single-occupancy building. It was built by the owner for its own use, occupied and fully utilized by the owner on the assessing date and added to by the owner after the assessing date. Because of the very speculative assumptions and the number of variables involved in attempting to value this owner-occupied, single-occupancy building as a multi-tenanted facility, I reject the use of the income approach, as did taxing district’s expert. Both experts were of the opinion that the sales comparison approach was the most reliable approach. Neither expert presented comparable sales of improved industrial properties in the taxing district. Taxpayer’s expert used sales in Middlesex, Union and Monmouth Counties. Taxing district’s expert used sales in Somerset County.
I find that the sales comparison approach is not appropriate in the subject case because of the absence of comparable improved industrial properties in the area and because the sales used by the experts, which purport to be comparable, are not. Taxpayer’s sale no. 1 is three times larger than the subject and sale no. 2 is twice the size of the subject. Both were vacant and appear to have been sold for multi-tenant use. Taxpayer’s sale no. 7 is a part of the plant which is sale no. 1. Sales nos. 3, 5 and 6 were also sales for multi-tenant use. Sale no. 3 *209 involved a mortgage foreclosure. Sale no. 4 in Union County is not of the same quality as the subject.
Taxing district’s appraisal expert’s four comparable sales also have been shown not to be comparable. Sale no. 11 was sold for conversion to office space and involved a series of transactions, the details of which were not available for analysis. Sales nos. 12, 13 and 14 were of smaller buildings (210,553 sq.ft., 63,124 sq.ft., and 51,600 sq.ft., respectively) and could not be accurately adjusted to reflect the market value of the subject because of a lack of details concerning interior construction.
Sales of large vacant industrial properties for conversion to multi-tenant industrial or office use involve substantial conversion costs. The subject property is a single-occupancy industrial building. This is its highest and best use, and it should be valued as such.
The basic problem in their sales comparison approaches is that the experts are comparing sales of vacant buildings for conversion to multi-tenant use or, in one case, for conversion to office use, with an existing, operating single-occupancy plant built by the owner for its own use. The expert witnesses are comparing the sale price paid by a purchaser who must adapt the property to the use that he intends to make of it with the value of a property that does not require such adaptation. It would appear that the cost of conversion, rather than being deducted from the value of the subject property, should be added to the sale prices of the comparable properties in order to obtain equivalent and comparable sale prices.
It is true that the subject property is partly a manufacturing and partly a warehouse facility and can be regarded as a general industrial facility. It is also true that if the subject property were put on the market and sold to a buyer who was not in the food processing business, the price might be less than if sold to a buyer who could utilize the building as presently used. When a house, a garden apartment, an office building or a shopping center is sold, there is no discount to the buyer *210 because there is no change in use of the property. Single occupancy, owner-occupied industrial plants should be no different. If valued by the sales comparison approach, the comparable sales should be of single-occupancy properties of similar use. If properties sought to be used as comparable sales are vacant when placed on the market, the purchase prices may have been discounted because of the need to adapt the properties to different industrial uses. Such sales are not comparable sales. The sales comparison approach is not appropriate for valuing large, single-occupancy owner-occupied industrial plants unless the comparable sales are of properties sold for the same or similar use without the necessity of substantial physical changes. Based on the testimony, I find that in this case, vacant industrial plants that are sold for conversion to multitenant use are not comparable sales. See CPC Int’l. v. Englewood Cliffs Bor., 193 N.J.Super. 261, 269-270, 473 A.2d 548 (App.Div.1984), certif. den. 97 N.J. 578, 483 A.2d 124 (1984).
The parties are in general agreement on the reproduction cost of the building, taxpayer’s expert being of the opinion that the cost is $15,900,000 and taxing district’s expert being of the opinion that the cost is $15,511,431. I will accept taxing district’s expert’s cost derived from the Real Property Appraisal Manual for New Jersey Assessors because that is the manual used in the revaluation of all properties in the taxing district. I will allow an overall physical depreciation rate of 16%, or 1% a year for the 16-year, weighted-average age of the building. I do not accept taxpayer’s expert’s physical depreciation rate of 36.98% overall (20% for structural items and 40% for nonstructural items) because it is excessive for a building in as good condition and as well maintained as the subject.[3] I will accept taxpayer’s expert’s functional obsolenscence rate of 5.8% and taxing district’s expert’s site improvements figure of $726,965. I do not accept taxpayer’s expert’s external obsolescence *211 deduction because it is based on an assumption that, if placed on the market, the property would take at least two and one-half years to sell, which, he stated, was 18 months longer than smaller industrial properties. He discounted this extra marketing time at 14%, resulting in a factor of .1581. His 18-month delay period is speculative, and a longer marketing period does not necessarily cause a loss in value if during the marketing period the property is occupied and in use. This comparison of the marketing time for larger industrial properties with that of smaller industrial properties is misplaced. If larger industrial properties take longer to sell, then that is the market and the sale price reflects that market, and the deduction for the length of time it takes to sell is not justified.
Determination of the land value is difficult because of the effect of the river adjoining the property and the flood plain within the property, and because it is located at some distance from major highways. Taxpayer’s expert estimated the land value at $12,500 an acre for developable land, based on five land sales. His sale no. 1 has no road frontage, and his sale no. 2 is a sale between related entities. His sale no. 4 cannot be used because the transaction was in two parts. The first part, the part on which taxpayer relied as being 87.9 acres, was actually only 22.26 acres. Sale no. 5 is also the sale of a parcel with no road frontage. Sale no. 3 is the most comparable, being 104.5 acres in size, with some of that land being in the flood plain, but this sale must be readjusted to $14,653 an acre because this sale was for only a one-half interest in the property-
Taxing district’s expert presented ten sales, many of which were geographically remote from the subject property. This expert analyzed his sale no. 3 (the same sale as taxpayer’s sale no. 3), and concluded that the sale price was $14,653 per acre. I rely on this sale as being the most comparable, and conclude that the developable land of the subject has a value of $15,000 per acre. I accept taxpayer’s breakdown of the land since it is based on a survey of the property and the State of New Jersey floodway and flood hazard area map, and apply this value to *212 55.3 acres. I apply 50% ($7,500) of this value to 17.3 acres (the area between the floodway limit and the 100-year flood elevation line [11.5 acres] and the area on the north side of Route 523 [5.8 acres]), and $500 an acre to the 37.2 acres within the flood plain, in the river and the utility easement area.
I, therefore, conclude that the value of the subject property for tax assessment purposes is as follows:
Reproduction cost of building $ 15,511,431
Less physical depreciation (16%) - 2,481,829
$ 13,029,602
Less functional obsolescence (5.8%) - 755,717
$ 12,273,885
Site improvements + 726,965
Total depreciated cost of improvements $ 13,000,850
Land value
55.3 acres at $15,000/acre $829,500
17.3 acres at $7,500/acre 129,750
37.2 acres at $500/acre 18.600
977,850
Total value $ 13,978,700
The Clerk of the Tax Court is directed to enter judgment reducing the 1987 assessment to:
$ 977,850 Land
13,000,850 Improvements
Total $13,978,700

Includes portion of area between floodway line and 100-year flood plain.

This figure is the total of $2,532,003 depreciation on the structures (20%) and $3,348,278 depreciation on interior improvements (40%), rounded.

Taxing district’s expert used 8.5% physical depreciation. The Real Property Appraisal Manual for New Jersey Assessors uses 11% for an industrial property with an effective age of 16 years.