KAHN, J.T.C.
This is the court’s opinion written pursuant to R. 2:5-lb and supplementing its previous oral decision, which granted defendant municipality’s motion to dismiss plaintiff taxpayer’s complaints pursuant to R. 4:37-2(b). The underlying complaints were local property tax appeals concerning the property located at 2 Hackensack Avenue, Kearny, New Jersey, for the years 1995 through 1999. The property was assessed as follows for all of the years in question:
Land $ 547,700
Improvements 3,507,600
Total $4,055,300
*491 Taking into account the chapter 123 ratio, the equalized values for those years are:
Year 1995 1996 1997 1998 1999
Equalized Value $6,828,254 $6,757,707 $6,126,756 6,322,576 $6,673,194
The property in question is an approximately eight-acre tract of land with a 423,532 square foot improvement consisting of a four-story masonry building originally constructed in 1940 as a bottling plant for Coca-Cola. Since its construction, it has been used exclusively for industrial/manufacturing purposes. Moreover, both parties stipulated that the subject’s present highest and best use was manufacturing/warehouse use. The ground floor and the basement comprise most of the building’s square footage. More specifically, the basement is 139,422 square feet, the ground floor is 140,000 square feet, the second and third floors combined are 142,792 square feet and the fourth floor is 1,000 square feet.
With the exception of an approximately 9,000 square foot office area located on the second floor, the building is used for manufacturing and warehouse purposes. There is no heat or air conditioning in the manufacturing areas. The ceilings of the first, second, and third floors range from ten to fifteen feet; each floor is supported by mushroom columns, two to four feet wide, and all floors are accessible by both elevator and stairs. With the exception of a 2,500 square foot area used as a machine shop, the basement space was either used for storage, as part of the manufacturing process, or remained vacant. Testimony indicated that while the ceiling height was low (five to seven feet) and parts of the floor were dirt, and/or heaved, it was, at least in part, actually used for storage, and in the manufacturing process.
Relying solely on the sales comparison approach, the taxpayer proffered that the actual value of the property, from 1995-1998, was $2,841,000, and, in 1999, was $2,273,000. The taxpayer offered nine comparables, three for each two-year period under appeal. It is important to point out that the taxpayer excluded *492 the 139,422 square foot basement from the total square footage of the subject in its sales comparison approach, thus considering the subject akin to a 284,110 square foot building. The basement was accorded no value.
During the trial, the court excluded comparables 1 and 2. Comparable 1 was excluded because it was an income-producing property, and the taxpayer only presented evidence on the comparable sales approach. In fact, upon motion, the taxpayer agreed that is should be excluded, stating “I think that counsel is correct. That this is an owner-occupied building; that we should consider only owner-occupied, single occupancy, manufacturing buildings. And, we won’t object to it being stricken.” Comparable 2 was also excluded because it was dissimilar from the subject in a variety of respects. The evidence indicated that taxpayer’s expert never actually viewed the inside of the comparable; it was actually a complex of perhaps ten distinct buildings, whereas the subject is only one; its square footage of 744,000 square feet grossly exceeded the subject’s at 284,000 square feet; a large portion of the comparable property was, in fact, under water; because comparable 2 was on the waterfront in Hoboken. The sales price was skewed by the possibility of a gentrifieation that simply did not exist in Kearny, and the evidence indicated that leases were executed for the comparable upon its sale. The seven remaining comparable sales were temporarily admitted into evidence. At the close of taxpayer’s ease, this court granted the municipality’s motion to dismiss the complaint.

The Standard.

This court must decide ^whether taxpayer successfully met its burden of demonstrating the purported value of the subject property. To successfully appeal a property tax assessment, the taxpayer must overcome the presumption of the validity of the assessment. Glen Wall Associates v. Wall Tp., 99 N.J. 265, 273, 491 A.2d 1247 (1985). A taxpayer can do this by offering evidence of the true value of the property. In order to overcome the presumption, and move forward with its case, the taxpayer’s *493 evidence “must be ‘based on “sound theory and objective data,” rather than on mere wishful thinking.’ ” MSGW Real Estate Fund LLC v. Borough of Mountain Lakes, 18 N.J.Tax 364, 376 (Tax 1998). If the municipality moves to dismiss at the close of taxpayer’s proofs pursuant to R. 4:37-2(b), the court, in deciding whether plaintiff has met the aforementioned burden, must accept all of plaintiffs proofs as true and accord the taxpayer all legitimate inferences which can be deduced from the evidence. Id., citing Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 535, 666 A.2d 146 (1995). For the reasons stated hereunder, this court finds that taxpayer has not met the aforementioned burden of proof.
 While there is no single doctrinal approach to the valuation of property, value is typically established by using one or more of the following three approaches: (1) the cost approach, (2) the income approach, and (3) the comparable sales approach. Shulton Inc. v. Clifton, 7 N.J.Tax 208 (Tax Ct.1983). Evidence of comparable sales is effective in determining the value of property only where there is a substantial similarity between the properties so as to admit of reasonable comparison. Berkeley Development Co. v. Berkeley Heights Tp., 2 N.J.Tax 438, 443 (Tax 1981). Whether such a substantial similarity exists is a question of fact. Id. Thus, appellate courts have long recognized that the trial court must be granted a wide discretion in determining the admissibility of sales sought to be relied on as comparable. Ford Motor Co. v. Tp. of Edison, 127 N.J. 290, 307, 604 A.2d 580 (1992). Typically, sales are deemed comparable where they show comparable building ratios, functional similarities, proximity of sales dates to assessing dates, similarity of age, construction, condition, and size. See Shulton, supra, 7 N.J.Tax at 218.
For the taxpayer’s appeals to succeed, it must demonstrate that the subject property was over-assessed by offering evidence of comparable sales. In the present case, the taxpayer offered three comparables for every two years appealed. Thus, there were three comparables offered for 1995-1996; three for 1997- *494 1998; and three for 1999-2000.[1] This court finds that the complaints should be dismissed for two reasons: (1) plaintiff offered no evidence as to the value of the subject’s basement; and (2) the comparable sales used were too dissimilar to the subject.

A. The Basement

This court finds that the taxpayer’s failure to present any evidence as to the value of the basement makes it impossible to find the value of the subject property. See Shulton Inc. v. Clifton, supra, 7 N.J.Tax at 218 (exclusion of basement space from calculation of value as not being usable space was incorrect where it was not supported by credible evidence). In fact, the video of the basement offered into evidence is inconsistent with plaintiffs position, as it clearly indicated the basement was being substantially used for storage, a machine shop, and as part of the manufacturing process. The fact that some small portions of the floor were dirt, and the ceilings were low, does not change the fact that the basement was being used and could continue to be used in both the manufacturing process and for storage space, thereby demonstrating value.
That the taxpayer’s 5% general adjustment to some of the comparables included some sort of adjustment for the basement is insufficient to make up for its failure to ascertain any sort of value. See Berkeley Development Co., supra, 2 N.J.Tax at 443 (noting that where a property with a basement is compared to one without, and there are no explanations or separate adjustments for these structural differences, the adjusted square footage value should be accorded no weight). This particular basement is too substantial for such an adjustment, as it comprises almost one third of the entire building. At the very minimum, the basement should have been adjusted separately. Because the plaintiff has failed to offer sufficient evidence of the subject’s value, this court has no choice but to dismiss plaintiffs case.

*495
B. The Comparables

Even if plaintiff did ascribe value to the basement, this court would dismiss the present appeals, because the comparables either did not have basements, had a different highest and best use, or were markedly dissimilar in size and/or construct.
Taxpayer used comparables 1, 2, and 3 to show comparable value for the 1995 and 1996 complaints. During the course of trial, however, comparables 1 and 2 were both dismissed for the reasons discussed above. Thus, at the close of taxpayer’s case, only comparable 3 remained. The municipality moved to dismiss and argued that the comparable was insufficient evidence. In response, taxpayer argued that comparable 3 was sufficient, and even if it were not, the court could use comparables 4, 5 and 6 to establish value.
Comparable 3 is stricken because it has a different use than the subject as is evidenced by its multiple tenants and large amount of office space. Taxpayers cannot use the sales comparison approach to value property where the highest and best use of the subject is manufacturing, and the comparable sales are different in size and utility, and were purchased vacant and for multi-tenant use. See Riegel Products Corp. v. Milford Bor. 13 N.J.Tax 546, 556-560 (Tax 1994) (finding that five comparable sales could not be used because they were converted from manufacturing facilities to multi-tenant complexes subsequent to the sale). Comparable 3, in the present case, was similarly vacant before the sale and subsequently used, in part, for multi-tenant use.[2] Moreover, the fact that office space comprised less than 1% of the subject property and about 17% of comparable 3 is another indicator that the comparable is too dissimilar from the subject to be used in the sales approach. Comparable 3 is too dissimilar in utility to be used and must be stricken.
*496 The taxpayer claims that, because it came to the same value for the years 1995 through 1999, the complaint should not be dismissed, notwithstanding the exclusion of its first three comparables, because comparables 4, 5 and 6 could be used for 1995 through 1998. This court disagrees, because those comparables are both too remote in time and too dissimilar in size and utility to be used.
The first issue is whether sales occurring after the relevant assessment date can be used as evidence in the comparable sales approach. While there is no official rule rejecting sales based on date, courts typically only allow post-assessment date sales to corroborate an opinion of value based on pre-assessment information. City of Atlantic City v. Boardwalk Regency Corp., 19 N.J.Tax 164, 184-86 (App.Div.2000). In order to use such sales to corroborate an opinion, that opinion must be based on facts known or reasonably ascertainable as of the assessment date. Id. at 184-85, citing Almax Builders, Inc. v. Perth Amboy, 1 N.J.Tax 31, 37 (Tax Ct.1980).
In the present case, the relevant assessment dates are October 1, 1994 and October 1, 1995, and the sales of comparables 4, 5 and 6 took place on August 28,1996, December 3,1996, and November 14, 1997, respectively. The three sales occurred at various times after the relevant assessment dates. While these sales would be admissible evidence to corroborate sales which took place before the assessment date, they are not admissible in the present case, because there is no other direct evidence to corroborate. The taxpayer wishes to use these sales as direct evidence of the subject’s purported value. The aforementioned case law prohibits post-assessment sales from being used in such a way. Therefore, this court strikes comparables 4, 5 and 6 as evidence of the subject’s value for the 1995 and 1996 tax years.
Remoteness in time notwithstanding, this court finds that com-parables 4, 5 and 6 should be struck because they are not substantially similar to the subject in utility, size, or construct.
*497 Comparable 4 is stricken because of its substantial renovations and difference in size from the subject. Where a comparable sale is renovated, the appraiser cannot value the property by simply assuming that its unrenovated value would be the same as its value after renovation, less the cost of renovation. Entenmann’s Inc. v. Totowa, 18 N.J.Tax 540, 557 (Tax 2000) (explaining that such a method of valuation is unreliable). In the present case, when comparable 4 was sold for $4,750,000, it was 770,352 square feet.[3] The buyer, however, demolished over half of the improvements, resulting in a 350,000 square foot building. The cost of these renovations, plus environmental cleanup, was purportedly $2,000,000, which the taxpayer simply added to the purchase price as an adjustment to value. The assumption that value can be determined by simply adding or subtracting the cost of renovations to a building is too unreliable; thus, comparable 4 must be stricken.
Comparable 4 is also excluded because of its disparity in size to the subject and difference in use. Use by a single owner-occupant is different from a multi-tenant highest and best use. See Entenmann’s Inc., supra, 18 N.J.Tax at 558. This difference alone significantly compromises comparability. Id., citing Newport Center v. Jersey City, 17 N.J.Tax 405, 419 (Tax 1998). In the present case, the evidence indicates that comparable 4 was converted into multi-tenant use upon sale, while the subject is owner-occupied. In light of this determination, comparable 4 is stricken.
Comparable 5 is excluded because of its difference in size to the subject and because, unlike the subject, it is in a mixed residential/commercial zone.
*498 Comparable 6 is excluded because it is virtually one half the size of the subject, does not have a basement, and is located in a different market. Size differentials between comparables tend to vitiate comparability. See Dresser Indust., Inc. v. Town of Harrison, 12 N.J.Tax 159, 166 (Tax 1991). Moreover, using a comparable without a basement where the subject has one is improper where clear adjustments are not made. See Berkeley Development Co., supra, 2 N.J. Tax at 443.
Comparable 7 is excluded because, similar to comparable 1, it was sold as an income-producing property. The evidence indicated there were leases already in place when the building was sold, and the building continued to be leased after the sale. Such a sale vitiates comparability where the subject is owner-occupied. The evidence also indicated that the comparable property was used primarily as a warehouse, which is different from the highest and best use of the subject, which also vitiates comparability.
Comparable 8 is excluded because it is significantly larger than the subject. See Dresser Indust., Inc., supra, 12 N.J.Tax at 166. In Dresser, the court found that there was too much of a size disparity where the subject contained 748,223 square feet, and two comparables contained only 124,600 and 140,000 square feet, respectively. Id. In the present case, comparable 8 contains 825,000 square feet on eight floors, and the subject, according to the plaintiff, contains only 284,110 square feet.[4] Moreover, the evidence indicated that there was an ISRA issue implicating the Industrial Site Recovery Act, N.J.S.A. 13: IK-6 to -35, which may have been a factor in the purchase price. For these reasons, comparable 8 must be excluded.
Comparable 9 is excluded because the building was leased to five or six tenants subsequent to the sale. See Entenmann’s, supra, 18 N.J.Tax at 558.
*499 In sum, this court grants defendant’s motion to dismiss the case because plaintiff has failed to produce reliable evidence of value, and thus has not overcome the presumption of correctness of the assessment.

Conclusion.

For the reasons discussed above, this court grants the municipality’s motion to dismiss the complaints, pursuant to R. 4:37-2(b). The assessments for the years 1995 through 1999 shall remain as follows:
Land $ 547,700
Improvements $3,507,600
Total $4,055,300

The 2000 year, however, was not tried with 1995 through 1999, and it is not discussed in this opinion.

 The evidence indicated that roughly 50% of the property was leased to multiple tenants within six months of the sale.

 Even if renovations were not a factor, comparable 4 is not substantially similar to the subject because of the gross size disparity. Size differentials between the subject and its comparable tend to vitiate comparability. For example, in Dresser Indust., Inc. v. Town of Harrison, 12 N.J.Tax 159, 166 (Tax 1991), this court found that a 748,223 square foot subject was not comparable to buildings containing only 140,000 square feet of usable space. In the present case, plaintiff claims the subject contains only 218,110 square feet of usable space. Comparable 4 is approximately 770,352 square feet. This disparity in size clearly vitiates comparability.

 Even if the basement were included, making the subject 423,532 square feet, comparable 8 is almost double its size.